UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR,<br><br>Defendant. | Case No. 22-cv-07182-WHA<br><br>**DECLARATION OF SHIVANI BAUTISTA IN SUPPORT OF DEFENDANT DEPARTMENT OF LABOR'S MOTION FOR SUMMARY JUDGMENT** |

I, Shivani Bautista, state as follows:

1. I submit this declaration in support of the United States Department of Labor's Motion for Summary Judgment in the above-captioned matter. I have personal knowledge of the following facts and if called to testify, I could and would competently testify thereto.

2. I am Chief Legal Officer and Corporate Secretary for NorthShore University Health System where I have been employed since 2018. Within my role and responsibilities at NorthShore, I oversee and manage all legal and compliance matters, advise on the System's governance and organizational documents and engage outside counsel and advisors related to the same. I have been in this role since April 1, 2023 and served in related roles including serving as General Counsel since October 2018. In my capacity as Chief Legal Officer and Corporate Secretary, I have knowledge and insight into the strategic operations of the company and oversee our compliance related reporting obligations including the annual submission of EEO-1 reports.

3. NorthShore University Health System is a community-based healthcare system based in the northwest suburbs of Chicago, Illinois. The Company is headquartered in Evanston and consists of six (6) hospitals and an approximately 900 physician multispecialty group practice, with more than 140

1  locations in the Chicagoland area.

2  4. NorthShore University Health System submitted EEO-1 Type 2 Reports in 2016, 2017, 2018, 2019, and 2020. The Company identified itself as a federal contractor in each of those EEO-1 Reports.

5. The Company first became aware of the FOIA Request for Type 2 EEO-1 Reports via email from OFCCP on or around September 21, 2022.

6. NorthShore considers its EEO-1 Reports to be confidential, commercial documents. Accordingly, the Company submitted written objections to the release of its EEO-1 Reports through OFCCP's established portal on October 19, 2022.

7. NorthShore's Type 2 EEO-1 Reports contain details of the organizational structure of its workforce, which it considers to be private, commercially valuable information. These Reports reveal the types and amount of employees the Company utilizes to remain successful and competitive.

8. NorthShore's EEO-1 Reports not only detail the overall headcount year-over-year, but also reveal NorthShore's strategic structuring of its workforce at each level and how that has changed over time. How NorthShore structures its workforce is part of its strategic business plan. For example, NorthShore's EEO-1 Reports from 2016 through 2020 show a significant change in the composition of its workforce and in the proportion of leadership to employees. The ratio of Executives to Managers to Professionals to Technicians to Service Workers is commercially valuable information, which shows how a company could stratify its workforce to be successful and profitable. Strategic changes in the Company's workforce structuring is commercially valuable information.

9. Some of NorthShore's strategic business decisions can also be revealed when comparing its EEO-1 Reports from before and after recent acquisitions. Specifically, these Reports show how the Company structured its workforce and the types of employees it employed in the years leading up to the acquisitions and how it restructured, reorganized, and staffed its operations post-acquisitions. These can create a roadmap for other similar competing organizations on how to efficiently and effectively operate and grow.

10. Recognizing the commercial value, and confidential nature of its EEO-1 Reports,

DECLARATION OF SHIVANI BAUTISTA IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 22-cv-07182-WHA                    2

NorthShore has taken steps to protect the security and confidentiality of its EEO-1 data and restricts access to these documents both internally and externally. NorthShore has not publicly released any EEO-1 Report submitted to OFCCP since 2016, nor has it released general demographic information about its workforce to the public.

11. Internally, NorthShore restricts access to its EEO-1 Reports only to employees in its Human Resources Department. These employees receive training on the confidential nature of the information that they are entrusted with in connection with their respective positions at NorthShore. For all other employees, access to the EEO-1 data is blocked in the Company's HRIS system via a series of data protection security measures.

12. To further ensure the confidentiality of the EEO-1 Reports, the Company does not maintain paper copies.

13. NorthShore takes the privacy of its employees seriously, and goes to great lengths to earn and maintain their trust. When soliciting the self-identification information used to prepare the EEO-1 Reports, NorthShore makes a promise to its employees that any information provided by the employee will be kept confidential. Once provided, this self-identification data is treated as confidential and housed securely on NorthShore's HRIS with access restricted only to the HRIS team and individuals who prepare the EEO-1 Reports.

14. If NorthShore's EEO-1 data is disclosed, that will directly contradict and undermine the assurances provided to employees. This is no small matter, and could have both practical and economic impact if NorthShore's relationship with its workforce is undermined. Further, despite NorthShore's commitment to keeping demographic data confidential and its many efforts to do so, the demographic information of particular employees may be apparent and made public if the EEO-1 Reports are released. This is particularly true in job categories with only a few incumbents. For example, NorthShore's 2020 EEO-1 Report shows only one employee in a particular category, making this employee and their race/ethnicity and gender easily identifiable. Similarly, the Report shows four employees in another EEO-1 Category, three of whom are women and one of whom is a man. This, at the very least, makes the man's race/ethnicity readily apparent to any viewer of the Report. Release of

the EEO-1 Reports would not only negate NorthShore's efforts to maintain the confidentiality of this sensitive data, but also threaten these individuals' privacy rights.

15. OFCCP has expressly assured federal contractors like NorthShore that its EEO-1 Reports will be kept confidential. As a federal contractor, NorthShore is required to file EEO-1 Reports; it is not optional or discretionary. Per OFCCP's regulations, reports filed will be used only in connection with, or in furtherance of, the administration of the Executive Order and the Civil Rights Act of 1964. Thus, OFCCP represents to federal contractors like NorthShore that the EEO-1 Reports will only be used for specific, limited purposes, which do not include releasing the reports to third-parties, including the media. The release of NorthShore's EEO-1 Reports will not further the purposes of Executive Order 11246 or any other laws enforced by OFCCP. To the contrary, such a release may have a chilling effect on compliance by eroding the business community's trust in the Agency. It may likewise deter employees from self-reporting, which is, certainly, why OFCCP provides this assurance of confidentiality in the first place.

16. A public disclosure could cause significant commercial and operational damage to the organization. The healthcare industry in which NorthShore operates is highly competitive and large regional health systems dominate the market, creating competition for patient populations. In this environment, NorthShore must be constantly evolving to obtain and retain talent with the specialized skillsets needed to succeed.

17. As part of its strategy to remain competitive, NorthShore has undergone significant growth since 2016. This steady, strategic growth can easily be seen when comparing NorthShore's EEO-1 Reports between 2016 and 2020. If released, competitors could not only see the overall increase in headcount, but also gain insight into which job categories the majority of the growth occurred.

18. The EEO-1 Reports could also reveal to NorthShore's competitors details about its recent acquisitions and workforce restructuring not elsewhere made public. For example, NorthShore acquired Swedish Covenant Hospital in 2020. If NorthShore's EEO-1 Reports are released, confidential and proprietary information related to the impact the acquisition had on NorthShore's workforce overall, as well as specifically what types of employees were acquired, and how the workforce was structured

before and after this acquisition would be apparent. Simply comparing NorthShore's 2019 and 2020 EEO-1 Reports would reveal to NorthShore's competitors that the majority of the acquired employees were in certain EEO-1 categories, and resulted in NorthShore acquiring certain types of employees not previously employed by the organization.

19.  Competitors could use this information as insight into the Company's growth strategies and staffing patterns and use the information as a model to drive success for their own initiatives and acquisitions, thereby depriving NorthShore of the competitive advantage that it has cultivated. This competitive disadvantage is magnified by releasing multiple years of EEO-1 Reports. Because the healthcare industry is quickly evolving, any advantage that NorthShore's competitors gain will have a substantial effect on the competitive positions of the Company within the industry.

20.  Because the instant FOIA request is limited to companies who identified as federal contractors on their EEO-1 Reports, release of those Reports will put companies like NorthShore whose major competitors may not be federal contractors at a competitive disadvantage. While NorthShore's competitors will gain the advantage of viewing NorthShore's sensitive, confidential workforce and staffing data, NorthShore will not share that same advantage and will not be able to view the data of their competitors.

21.  Even releasing NorthShore's Type 2 EEO-1 Report for a single year could cause the Company competitive disadvantage. In addition to occupational categories, the EEO-1 Reports reflect demographic data for the Company's overall workforce. If its competitors successfully lure away any of NorthShore's employees, NorthShore will lose the talent and experience with the departing employees and will incur additional costs to recruit, hire, train, and retain additional talent. This potential for competitive disadvantage is particularly harmful for a company like NorthShore whose entire workforce is concentrated in one state, rather than some of its competitors whose employees may be spread across the country and more difficult to identify and locate through publicly available information.

22.  Because EEO-1 Reports present an incomplete and skewed picture of a company's diversity and the data can easily be misconstrued, the public release of these Reports can cause harm to NorthShore. The EEO-1 data for Northshore may easily be compared to the aggregate industry data

DECLARATION OF SHIVANI BAUTISTA IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 22-cv-07182-WHA                              5

published by EEOC to make comparisons that -- without meaningful context -- are incomplete and inaccurate. These comparisons may include analyses that suggest statistically significant differences in workforce representation on the basis of gender and/or race/ethnicity by EEO-1 category, based solely on comparisons to the EEO-1 aggregate industry data published by EEOC. The ability to conduct such an analysis raises concerns because of how such information could be presented negatively portrayed by uninformed third parties and competitors.

23. The EEO-1 data is also subject to distortion and misrepresentation by outsiders, since it does not reflect the job categories or process used by NorthShore internally for staffing and diversity purposes. Further, the EEO-1 Reports may even hide diversity because of the race and ethnicity categories and definitions mandated by the EEOC. For example, stakeholders may not view "White" employees listed on the EEO-1 Report as diverse. However, the EEOC's definition of "White" includes people "having origins in any of the original people of Europe, the Middle East, or North Africa," groups that are otherwise considered by NorthShore as "diverse." Further, many of those "White" employees may also be individuals with disabilities, protected veterans, identify as LGBTQ+, or be a part of other groups that add to NorthShore's diversity.

24. The category of "Two or More Races," which includes all persons who identify with more than one of the following races: White, Black or African American, Native Hawaiian or Other Pacific Islander, Asian, American Indian or Alaska Native, is also misleading. If those unfamiliar with these categories attempt to use the EEO-1 Reports to draw conclusions about NorthShore's Black or African American representation, for example, the conclusions may be negatively skewed because some Black or African American employees may also identify another race category as well and will be included in the Two or More Races category, artificially deflating the Black or African American representation. Without additional context, this type of skewed conclusion could cause significant reputational and, in turn, financial and competitive harm to NorthShore. Commercial or economic harm to NorthShore is, by extension, harm to its employees. If business goes down, NorthShore may not maintain its current level of staffing and might need to eliminate positions.

25. NorthShore's EEO-1 data is commercially valuable, competitively useful, and highly

DECLARATION OF SHIVANI BAUTISTA IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 22-cv-07182-WHA                                6

sensitive information. The Company should not be hampered in its ability to make decisions about growth, assignments, and staffing because its EEO-1 data may be subject to disclosure. To remain commercially profitable and competitive in the industry, NorthShore must be able to evolve its business using its specialized knowledge and judgment, without being forced to share indicia of those decisions publicly.

    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 22 day of August, 2023, at 3:40pm.

*Shivani Bautista*
NAME

DECLARATION OF SHIVANI BAUTISTA IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

No. 22-cv-07182-WHA         7