D. VICTORIA BARANETSKY (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th Street, Suite 200
Emeryville, CA 94608
Telephone:    (510) 982-2890
Facsimile:    (510) 849-6141
Email:    vbaranetsky@revealnews.org

THERESE Y. CANNATA (SBN 88032)
AARON R. FIELD (SBN 310648)
ZACHARY E. COLBETH (SBN 297419)
CANNATA O'TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111
Telephone:    (415) 409-8900
Facsimile:    (415) 409-8904
Email:    tcannata@cofolaw.com
          afield@cofolaw.com
          zcolbeth@cofolaw.com

Attorneys for Plaintiffs
THE CENTER FOR INVESTIGATIVE
REPORTING and WILL EVANS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS,<br><br>        Plaintiffs,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF LABOR,<br><br>        Defendant. | CASE NO. 3:22-cv-07182-WHA<br><br>**OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; NOTICE OF CROSS-MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:     December 14, 2023<br>Time:    8:00 a.m.<br>Judge:   Hon. William Alsup<br>Place:   Ctrm. 12, 19th Floor |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

## <u>TABLE OF CONTENTS</u>

NOTICE OF CROSS-MOTION AND CROSS-MOTION ..........................................................vii

RELIEF SOUGHT .................................................................................................................vii

ISSUES TO BE DECIDED ......................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

   I.   INTRODUCTION .........................................................................................................1

   II.   STATEMENT OF FACTS ...........................................................................................2

       A. Federal Contractors Are Required To Submit EEO-1 Reports to DOL......................4

       B. CIR's FOIA Requests For EEO-1 Workforce Data In This Case ...............................4

       C. DOL's Partial Release and Partial Withholding of EEO-1 Data................................5

       D. Publishing Workforce EEO-1 Data Is An Industry Trend .........................................6

   III. PROCEDURAL HISTORY .........................................................................................6

   IV. ARGUMENT ...............................................................................................................7

       A.     Legal Standard ..................................................................................................7

       B.     DOJ's Exemption 4 And Trade Secrets Act Claims Are Precluded ...................7

       C.     Exemption 4 And § 1905 Do Not Apply To EEO-1 Reports...............................8

             1. An EEO-1 Report Is Not A Trade Secret Under FOIA Or § 1905 ...................9

             2. EEO-1 Reports Are Not "Commercial" Under Exemption 4 ......................10

             3. Diversity Reports Are Not Confidential Under Exemption 4 ......................14

       D. Disclosure Of EEO-1 Reports Would Cause No Foreseeable Harm ........................19

       E. DOL's Exemption 6 Claim, Raised In A Footnote, Fails..........................................23

       F. Declaratory Relief Should Be Granted For DOL's FOIA Violations.........................23

       G. DOL May Not Withhold 621 EEO-1 Reports As Nonresponsive .............................25

   V.   CONCLUSION..............................................................................................................25

i

## <u>TABLE OF AUTHORITIES</u>

## FEDERAL CASES

*A.C.L.U. v. U.S. D.O.J.*
  880 F.3d 473 (9th Cir. 2018)........................................................................................7

*Am. Small Bus. League v. U.S. Dep't of Def*
  411 F.Supp.3d 824 (N.D. Cal. 2019) ................................................................. 15, 22

*Am. Soc'y for Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.*
  No. 19 Civ. 3112 (NRB), 2021 WL 1163627, (S.D.N.Y. Mar. 25, 2021) ............... 18, 19

*Amadis v. United States Dep't of State*
  971 F.3d 364 (D.C. Cir. 2020) ...................................................................................21

*Animal Legal Defense Fund v. U.S. F.D.A.*
  836 F.3d 987 (9th Cir. 2016) ................................................................................7, 9

*Besson v. U.S. Dep't of Commerce*
  480 F.Supp.3d 105 (D.D.C. 2020) ............................................................................12

*Carlson v. U.S. Postal Serv.*
  504 F.3d 1123 (9th Cir. 2007)................................................................... 11, 12, 13

*Ctr. for Investigative Reporting v. Dep't of Lab.*
  424 F.Supp.3d 771 (N.D. Cal. 2019) ................................................................*passim*

*Ctr. for Investigative Reporting v. Dep't of Lab.*
  No. 18-CV-02414-DMR, 2020 WL 2995209 (N.D. Cal. June 4, 2020)........................15

*Children's Earth Found. v. Nat'l Marine Fisheries Serv.*
  85 F.Supp.3d 1074 (N.D. Cal. 2015) .............................................................23, 24, 25

*Citizens Comm'n on Human Rights v. F.D.A.*
  No. 92-CV-5313, 1993 WL 1610471 (C.D. Cal. May 10, 1993) .................................10

*Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*
  711 F.3d 180 (D.C. Cir. 2013) ...................................................................................24

*Citizens for Responsibility & Ethics in Wash. v. United States Dep't of Just.*
  58 F.4th 1255 (D.C. Cir. 2023) .................................................................................10

*Clark v. Bear Stearns & Co., Inc.*
  966 F.2d 1318 (9th Cir.1992)......................................................................................7

*CNA Fin. Corp. v. Donovan*
  830 F.2d 1132 (D.C. Cir. 1987) .................................................................................10

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*
  244 F.3d 144 (D.C. Cir. 2001) ...................................................................................15

*Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*
  802 F. App'x 309 (9th Cir. 2020) ..............................................................................15

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

ii

*Ctr. for Investigative Reporting v. Dep't of Lab.*
    No. 18-CV-02414-DMR, 2020 WL 2995209 (N.D. Cal. June 4, 2020)........................15

*Dep't of Def. v. Fed. Labor Relations Auth.*
    510 U.S. 487 (1994)........................23

*Dep't of State v. Washington Post Co.*
    456 U.S. 595 (1982)........................23

*Ecological Rights Found. v. F.E.M.A.*
    No. 16-cv-05254-MEJ, 2017 WL 5972702 (N.D. Cal. Nov. 30, 2017) ........................25

*Evans v. Synonsys, Inc.*
    34 F.4th 762 (9th Cir. 2022) ........................2

*Excelsior Underwear, Inc.*
    156 N.L.R.B. 1236 (1966) ........................12

*Food Marketing Institute v. Argus Leader Media*
    139 S. Ct. 2356 (2019) ........................*passim*

*GC Micro Corp. v. Def. Logistics Agency*
    33 F.3d 1109 (9th Cir. 1994)........................9

*Gen. Elec. Co. v. U.S. Nuclear Regulatory Comm'n*
    750 F.2d 1394 (7th Cir. 1984)........................20

*Getman v. N.L.R.B.*
    450 F.2d 670 (D.C. Cir. 1971) ........................12

*Gilmore v. U.S. Dep't of Energy*
    33 F.Supp.2d 1184 (N.D.Cal. 1998) ........................24

*Greenspan v. Bd. of Governors of the Fed. Rsrv. Sys.*
    643 F. Supp. 3d 176, 186 (D.D.C. 2022) ........................21

*H.L. v. Matheson*
    450 U.S. 398 (1981)........................7

*JCI Metal Prod. v. U.S. Dep't of the Navy*
    No. 09-CV-2139-IEG, 2010 WL 2925436 (S.D. Cal. July 23, 2010) ........................7

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*
    375 F.Supp.3d 93 (D.D.C. 2019) ........................19

*Kissi v. EMC Mortg. Corp.*
    887 F.Supp.2d 1 (D.D.C. 2012) ........................7

*Long v. IRS*
    693 F.2d 907 (9th Cir.1982)........................24

*Machado Amadis v. Dep't of Justice*
    388 F.Supp.3d 1 (D.D.C. 2019) ........................20

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

iii

*Martech USA, Inc. v. Reich*
    No. C-93-4137 EFL, 1993 WL 1483700 (N.D. Cal. Nov. 24, 1993) .............................21

*Merit Energy Co. v. U.S. Dep't of Interior*
    180 F.Supp.2d 1184 (D. Colo. 2001) ................................................................. 13

*Nat'l Bus. Aviation Ass'n, Inc. v. F.A.A.*
    686 F.Supp.2d 80 (D.D.C. 2010) ...................................................................... 12

*Nat'l Parks & Conservation Ass'n v. Kleppe*
    547 F.2d 673 (D.D.C. 1976) ....................................................................... 14, 15

*Nat'l Treas. Employees Union v. I.R.S.*
    765 F.2d 1174 (D.C. Cir. 1985) ......................................................................... 8

*New Hampshire Right to Life v. U.S. Dep't of Health & Human Servs.*
    778 F.3d 43 (1st Cir. 2015) ............................................................................ 13

*NRDC, Inc. v. U.S. EPA*
    966 F.2d 1292 (9th Cir. 1992) .................................................................... 24, 25

*N.Y. Times Co. v. U.S. Food & Drug Admin.*, No. 19-CV-4740 (VEC)
    2021 WL 1178126 (S.D.N.Y. Mar. 29, 2021) ................................................... 15

*Osen LLC v. U.S. Central Command*, Case No. 18-CV-6069 (BCM)
    2019 WL 4805805 (S.D.N.Y. Sept. 30, 2019) ..................................................... 8

*Pac. Architects & Eng'rs Inc. v. U.S. Dep't of State*
    906 F.2d 1345 (9th Cir. 1990) .......................................................................... 9

*Pub. Citizen Health Research Grp. v. Food & Drug Admin. (F.D.A.)*
    704 F.2d 1280 (D.C. Cir. 1983) ................................................................*passim*

*Pub. Citizen v. U.S. Dep't of Health & Human Servs., (D.H.S.)*
    975 F.Supp.2d 81 (D.C. 2013) ................................................................... 11, 12

*Pub. Justice Found. v. Farm Serv. Agency*
    538 F.Supp.3d (N.D. Cal. 2021) ...................................................................... 18

*Renewable Fuels Ass'n v. E.P.A.*
    519 F.Supp.3d 1 (D.D.C. 2021) ...................................................................... 17

*Rosenberg v. U.S. Dep't of Defense*
    342 F.Supp.3d 62 (D.D.C. 2018) ..................................................................... 21

*Ruckelshaus v. Monsanto Co.*
    467 U.S. 986 (1984) ....................................................................................... 9

*Sears, Roebuck & Co. v. General Services Admin.*
    509 F.2d 527 (D.C. Cir. 1974) ......................................................................... 3

*Seife v. FDA*
    43 F.4th 231 (2d Cir. 2022) ........................................................................... 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

iv

*Sims v. Central Intelligence Agency*
  642 F.2d 562 (D.C. Cir. 1980) ...................................................................... 27

*Skybridge Spectrum Found. v. F.C.C.*
  No. 10-01496, 2012 WL 336160 (D.D.C. 2012) ........................................ 13

*Starkey v. U.S. Dep't of Interior*
  238 F.Supp.2d 1188 (S.D. Cal. 2002) .......................................................... 11

*Synopsys, Inc. v. U.S. Dep't of Labor*
  No. 20-16414, No. 20-16416, 2022 WL 1501094 (9th Cir. May 12, 2022) ..................... 8

*Taylor v. Babbitt*
  760 F.Supp.2d 80 (D.D.C. 2011) .................................................................. 9

*Transgender Law Center v. ICE*
  46 F.4th 771 (9th Cir. 2022) ...................................................................... 25

*United States v. Stauffer Chem. Co.*
  464 U.S. 165 (1984) .................................................................................. 7

*United Techs. Corp. v. U.S. Dep't of Def.*
  601 F.3d 557 (D.C. Cir. 2010) .................................................................... 20

*Van Bourg, Allen, Weinberg & Roger v. N.L.R.B.*
  728 F.2d 1270 (9th Cir. 1984) .................................................................... 12

*WP Co. v. U.S. Small Bus. Admin.*
  502 F.Supp.3d (D.D.C. 2020) ...................................................................... 15

*Watkins v. U.S. Bureau of Customs & Border Prot.*
  643 F.3d 1189 (9th Cir. 2011) .................................................................... 11

*Whittaker Corp. v. Execuair Corp.*
  953 F.2d 510 (9th Cir. 1992) ...................................................................... 10

*Yagman v. Pompeo*
  868 F.3d 1075 (9th Cir. 2017) .................................................................... 25

## FEDERAL STATUTES

5 U.S.C. § 552(b)(4) ..................................................................................... 1, 9, 20

5 U.S.C. § 552(b)(6) ..................................................................................... 23

5 U.S.C. § 552 (a)(8) ................................................................................... 1, 19

42 U.S.C. § 2000e-8(e) ................................................................................. 3

18 U.S.C. § 1905 ......................................................................................... 1, 9

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

v

**OTHER AUTHORITIES**

Title VII of Civil Rights Act of 1964 (CRA) .................................................................. 1

Lyndon Johnson, *Remarks upon Signing the Civil Rights Act of 1964* (July 2, 1964) ................ 1

87 Fed. Reg. § 51145 (Aug. 19, 2022)........................................................................ 4, 5

*Final Notice Re: Disclosure of Type 2 EEO-1 Data in Response to Freedom of Information Act*

*Request*, Department of Labor (Mar. 7, 2023) ............................................................. 5

114 Cong. Rec. S1494............................................................................................ 19

Executive Order 12600…. ....................................................................................... 24

29 C.F.R. § 70.26 ................................................................................................. 24

29 C.F.R. § 1602.7-14......................................................................................... 1, 2

41 C.F.R. § 60-1.7(a) ............................................................................................ 12

Fed. R. Civ. P. 56(a).............................................................................................. 7

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF CROSS-MOTION AND CROSS-MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 14, 2023 at 8:00 a.m., at the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102, in Courtroom 12 (19th floor), plaintiffs The Center for Investigative Reporting and Will Evans (collectively, "Plaintiffs" or "CIR") will, and hereby do, cross-move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment in their favor and against defendant United States Department of Labor ("DOL" or "Defendant"). Plaintiffs cross-move for an order and judgment requiring DOL to conduct a reasonable search and to disclose all responsive records related to the Bellweather Objectors, *see* Dkt 34 at 3, and all similar contractors by a prompt date certain. Further, CIR cross-moves for an order and judgment declaring that DOL did not lawfully process Plaintiffs' Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") request, as Defendant has impermissibly delayed disclosure for years.

Plaintiffs are entitled to judgment as a matter of law because this matter is collaterally estopped and regardless, DOL improperly withheld the records. Plaintiffs' Cross-Motion is based on this Cross-Motion and Opposition; the following Memorandum of Points and Authorities in support and the anticipated Reply in support; the declarations of D. Victoria Baranetsky, Marc Bendick, and Jamillah Williams filed herewith; the Court's records and files in this action and other matters which the Court takes judicial notice; the Court's records, files, and published decision in *Center for Investigative Reporting v. Department of Labor* ("*CIR I*"), 424 F. Supp. 3d 771 (N.D. Cal. 2019); and any other materials or arguments the Court may receive before or at the hearing on this Cross-Motion.

## RELIEF SOUGHT

Plaintiffs request that the Court issue an Order granting summary judgment in their favor and against Defendant. DOL should be ordered to disclose all responsive records to CIR by a prompt date certain. Further, the Court should find and declare that DOL has failed to comply with FOIA by delaying processing of CIR's request.

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

**ISSUES TO BE DECIDED**

The issues to be decided are: (1) Is DOL's position precluded by *CIR I*, 424 F. Supp. 3d 771?; (2) Has DOL met its burden to prove that the requested records are exempt under Exemption 4, 18 U.S.C. § 552(b)(4)?; (3) Has DOL met its burden to prove that the requested records are exempt under the Trade Secrets Act, 18 U.S.C. § 1905?; (4) Has DOL shown that disclosure of the records would cause foreseeable harm pursuant to the OPEN FOIA Act, 5 U.S.C. § 552 (a)(8)(A)?; (5) Should the Court find and declare that DOL has failed to comply with FOIA by delaying disclosure and failing to provide a determination for years?; and (6) Should the Court find and declare that DOL has not conducted an adequate search and order DOL to disclose 621 EEO-1 reports based on the definition of "contractors"?

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

In this lawsuit, CIR, the nation's first nonprofit investigative newsroom whose work informs more than a million readers and listeners each week, seeks, yet a third time, access to EEO-1 Reports. Declaration of Victoria Baranetsky ("Baranetsky Decl.") ¶ 2. EEO-1 Reports are records that large federal contractors are required to submit to the DOL each year under the Title VII of the Civil Rights Act of 1964 ("CRA")[1] to guard against discrimination. DOL is continuing to withhold at least 16,755 EEO-1 Reports from 4,796 contractors under Exemption 4 of FOIA and the Trade Secrets Act.

EEO-1 Reports are of great public importance. When President Johnson signed the CRA into law, he stated that it would place all Americans on more equal footing in various aspects of their daily lives, including in the workplace.[2] All Americans share an interest in achieving this goal and they thus also share an interest in access to EEO-1 Report data.

CIR has requested, obtained, and reported on this data multiple times over the years. Baranetsky Decl. ¶¶ 3-4. Unfortunately, CIR is in a perpetual state of 'Groundhog Day' in again

---

[1] Section 709(c) of the CRA, as amended, 42 U.S.C. § 2000e-8(c), and can be found in 29 CFR 1602.7-.14 and 41 CFR 60-1.7(a).
[2] Lyndon Johnson, *Remarks upon Signing the Civil Rights Act of 1964* (July 2, 1964), *available at* https://shorturl.at/cikzN.

having to wrestle EEO-1 data from DOL. CIR has been forced to file two prior lawsuits to obtain the same EEO-1 Reports at issue here, both of which resulted in full disclosure.[3] Once again, CIR has been forced to sue DOL, five years after its made its first request in this case.

As in *CIR I*, CIR's motion for summary judgment should be granted, and DOL's motion should be denied for multiple reasons. *First*, *CIR I*, which turned on the court holding that EEO-1 Reports are not "commercial" and creates no foreseeable harm, involved the same parties and the same type of records as this case, collaterally estopping DOL's identical claims here. *Second*, even if for argument's sake, *CIR I* is not dispositive, DOL has not and cannot show, that EEO-1 Reports are properly withheld under Exemption 4. *Third*, DOL has not show that disclosing EEO-1 Reports would cause foreseeable harm. *Fifth*, DOL's staggering delays and failure to provide a lawful determination violates FOIA. *Sixth*, DOL has not met its burden to justify withholding 621 EEO-1 reports on the grounds that they are nonresponsive.

## II.    STATEMENT OF FACTS

### A.    FEDERAL CONTRACTORS ARE REQUIRED TO SUBMIT EEO-1 REPORTS TO DOL

Each year, companies that qualify as federal contractors are required to submit demographic data on their employees to the DOL under section 709(c) of the CRA. These companies must annually file an Employment Information Report, also known as a Standard Form 100, ("EEO-1 Form") with the EEO-1 Joint Reporting Committee, a committee comprised of the two sub-agencies within DOL, the Office of Federal Contract Compliance Programs ("OFCCP") and the Equal Employment Opportunity Commission ("EEOC"). Baranetsky Decl., Ex. F (OFCCP Manual); 41 CFR § 60-1.7 (OFCCP regulations); 29 CFR §1602.7 (EEOC regulations). The EEOC and the OFCCP jointly administer the EEO-1 reporting process under the authority of the CRA and "in the interests of consistency, uniformity and economy" they jointly

---

[3] In *Ctr. for Investigative Reporting v. Dep't of Labor*, Case No. 3:18-cv-02008 (N.D. Cal. Dec. 21, 2008), DOL disclosed EEO-1 Reports without a court order to settle the case. Baranetsky Decl. ¶ 3. And, in *CIR I*, 424 F. Supp. 3d at 776-79, *aff'd sub. nom. Evans v. Synonsys, Inc.*, 34 F.4th 762, 772 (9th Cir. 2022), this court ordered DOL to disclose EEO-1 Reports because they are not "commercial" under FOIA Exemption 4 and disclosure would not cause foreseeable harm. Baranetsky Decl. ¶ 4. DOL chose not to appeal, and an intervenor's appeal was dismissed. *Id.*

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

2

developed the EEO-1 Form "as a single form [that] meets the statistical needs of both programs." Baranetsky Decl., Ex. G (EEO-1 instructions).

The EEO-1 Form is a mandatory annual survey that requires demographic workforce data from federal contractors using specific predetermined categories. Baranetsky Decl., Ex. H (sample of form). The three categories of information called for by the EEO-1 Form are (1) two sex options, (2) six race/ethnicity categories, and (3) ten general job classifications. *Id.* If a federal contractor fails to file an EEO-1 Form, under section 709(c) of the CRA, the EEOC may compel the contractor to file an EEO-1 form by obtaining a court order and imposing further penalties, including termination of and debarment from future contracts. Baranetsky Decl., Ex. G at 3.

Two types of reports are created from the EEO-1 Form and filed with DOL: Type 1 Component Reports (for employers "doing business at only one establishment") and Type 2 Consolidated 2 Reports (for "employers doing business at more than one establishment"). *Id.* at 4. The *only* reports at issue here are Type 2 Consolidated Reports. ("Type 2 Reports" or "EEO-1 Reports"). EEO-1 Reports include demographic data on *all* employees across *all* of a federal contractor's offices in a single report. *Id.* at 4-5.

Type 2 Reports contain high-level, aggregate data, as opposed to the more particularized data in Type 1 Reports. Dkt. No. 34 at 11-12; Baranetsky Decl., Ex. H. The three broad categories of diversity data (sex, race/ethnicity, and ten job classifications) that they contain were selected "to simplify and standardize the method of reporting." Baranetsky Decl., Ex. G at 7, Ex. H. Their ten job classifications make EEO-1 Reports even more abstract, since *all* jobs "are considered to belong[] in one of the broad job categories." *Id.*

Though the EEOC and OFCCP jointly collect EEO-1 data, the two agencies are permitted to use the data differently. Baranetsky Decl., Ex. I (OFCCP FAQ). The EEOC "is prohibited from making public" EEO-1 data, *Id.*; § 709(e) of CRA, whereas the OFCCP is permitted to make EEO-1 Reports public under FOIA. *Id.* Since 1974, courts have ruled that the CRA "prohibition against disclosure does not apply to OFCCP." *See* 42 U.S.C. § 2000e-8(e); *Sears, Roebuck & Co. v. General Services Admin.*, 509 F.2d 527, 529 (D.C. Cir. 1974). OFCCP

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

3

has stated as much, online and in the federal register, 87 F.R. § 51145, and has previously released EEO-1s to CIR, Baranetsky Decl. ¶¶ 3-5, and other news organizations, *id*, Ex. AE.

**B.    CIR'S FOIA REQUESTS FOR EEO-1 REPORTS IN THIS CASE**

On January 10, 2019, Mr. Evans on behalf of CIR, submitted a FOIA request to the OFCCP for workforce data from all Consolidated EEO-1, Type 2 Reports submitted by all federal contractors in 2016. Baranetsky Decl. ¶ 10, Ex. J. Over the next year, Mr. Evans filed two updates to the January 2019 FOIA request with the OFCCP, requesting years 2017 and 2018. *Id*. ¶ 10, Exs. K-L. DOL responded on October 2, 2020. *Id.* ¶ 11, Ex. M. DOL took the position that it had to notify each federal contractor who had submitted an EEO-1 Report and provide an opportunity to object under its own regulations and Executive Order 12600, as the data "may be protected from disclosure under FOIA Exemption 4." *Id.*

On October 30, 2020, CIR responded, citing *CIR I. Id.*, Ex. N. In *CIR I*, another judge of this court held that DOL "was not justified in applying Exemption 4" because the records were not commercial because the "companywide" data and "EEO-1 Report's general job categories" made it "impossible to discern a corporation's structure." 424 F. Supp. 3d at 779. *CIR I* also held disclosure would not create a foreseeable harm. *Id.* at 780. DOL did not appeal, and the Ninth Circuit dismissed an appeal by an intervenor. Baranetsky Decl. ¶ 4.

On December 18, 2020, DOL restated its contention that it was "obligated to notify submitters of the requests" due to the possibility that Exemption 4 might apply, despite *CIR I*. Baranetsky Decl. ¶ 13. DOL wrote that it did "not believe that the Northern California's District Court's decision in [*CIR I*] has precedential effect on all EEO-1, Type 2 reports." *Id.* Further, DOL estimated that CIR's requests involved well "over 20,000 submitters from countless industries," but did not say whether it had conducted a search and did not provide a lawful determination on CIR's requests, despite the determination requirement of FOIA. *Id.*

In the months after DOL's December 2020 email, CIR sought additional information on how DOL planned to move forward with processing CIR's requests, but DOL offered little, if any, information. Baranetsky Decl. ¶ 14. On June 2, 2022, Mr. Evans updated his initial FOIA

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

to seek all EEO-1 Reports for 2019 and 2020. *Id*. ¶ 15. OFCCP acknowledged the request, consolidated it with the CIR's prior three, and assigned the requests tracking No. 872421, covering 2016, 2017, 2018, 2019, and 2020. *Id*. ¶ 16, Ex. Q.

On May 23, 2022, CIR General Counsel, D. Victoria Baranetsky, sent a letter to the Solicitor of Labor and OFCCP Director that called attention to DOL's wrongful withholding of EEO-1 Reports and requested an immediate determination on CIR's FOIA requests. *Id*. ¶ 17, Ex. R. The letter reiterated CIR's position that OFCCP was and is bound by *CIR I*. *Id*. DOL replied that it continued "to strongly disagree" that the *CIR I* had "any binding effect." *Id*.

On August 19, 2022, three years after CIR's initial FOIA request in this case, OFCCP published a notice in the Federal Register identifying CIR to all federal contractors and informing them of CIR's requests. *Id*. DOL required any objections to disclosure by September 19, 2022,[4] but then extended that deadline twice, without further regulation, first to October 2022, then to March 2023.[5] DOL told CIR that it intended to publish non-objecting contractors' EEO-1 Reports and name the objectors, but provided no disclosure date. Baranetsky Decl. ¶ 19. CIR's counsel called DOL repeatedly to try to clarify, to no avail. *Id*. Finally, CIR filed this lawsuit understanding DOL would not comply with *CIR I*, nor provide a basic timeline. *Id*.¶ 20.

### C.    DOL's Partial Release and Partial Withholding of EEO-1 Data

At the Case Management Conference, held April 13, 2023, DOL provided an approximate timeline for the release of *some* EEO-1 Reports (from non-objecting contractors) and a tentative schedule for when determinations would be made for objecting contractors. DOL did not provide a list of objecting contractors. Baranetsky Decl. ¶ 21. On April 17, 2023, OFCCP released all EEO-1 Reports for non-objecting federal contractors. Dkt. 34 at 7. This disclosure comprised of 56,419 EEO-1 Reports from 19,289 federal contractors. *Id*. (In total 75,000 reports were found, regarding a total of 24,355 contractors.) Subsequent to release, CIR

---

[4] *Notice of Request Under the Freedom of Information Act for Federal Contractors' Type 2 Consolidated EEO-1 Report Data*, 87 Fed. Reg. 51145 (Aug. 19, 2022) https://bit.ly/3ThtEzw; Baranetsky Decl. ¶ 18, Ex. S (CIR article).
[5] *Final Notice Re: Disclosure of Type 2 EEO-1 Data in Response to Freedom of Information Act Request*, Department of Labor (Mar. 7, 2023), https://shorturl.at/goS29.

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

published a story with USAToday on this disclosure. Baranetsky Decl. ¶ 22, Ex. T. To date, a significant number of responsive EEO-1 Reports are withheld (16,905 corresponding to 4,796 objecting contractors). OFCCP determined the data from 16,755 of reports was properly withheld under FOIA Exemption 4. *Id.* ¶ 23.

### D.    PUBLISHING WORKFORCE EEO-1 DATA IS AN INDUSTRY TREND.

A substantial – and growing – number of U.S. employers now voluntarily release their EEO-1 report data annually. Declaration of Marc Bendick ("Bendick Decl.") ¶ 13 & n.19-20. Typically, they release this data in their corporate annual reports, other annual diversity reports, or on their website. *Id.* "The releasing firms include 50 of the 100 largest publicly-traded firms." *Id.* These include contractors "broadly distributed across public utilities, finance, consumer services, manufacturing, and other sectors." *Id.* ¶ 13 n.19. For example, Intel began posting EEO-1 Reports online in 2008. Baranetsky Decl., Ex. U. Google began posting its data in 2014, after a similar FOIA lawsuit, and Microsoft followed in 2015. *Id.*, Exs. V-W, AF.

This trend reflects a growing recognition among companies, investors, and other stakeholders that publishing EEO-1 Reports is in the public interest. *See* Declaration of Jamillah Williams ("Williams" Decl.") ¶¶ 7-21. Companies recognize it builds public trust and helps ensure a diverse workforce. Baranetsky Decl., Ex. X. News outlets, including CIR, and academics have used EEO-1 Reports in numerous articles about diversity. *Id.*, Exs. Y-Z. Congressmembers have called for greater access to EEO-1 Reports, including through FOIA.[6]

## III.    PROCEDURAL HISTORY

At an April 13, 2023 CMC, this Court directed the parties to file bellwether cross-motions for summary judgment regarding six federal contractors to be selected by DOL. DOL has identified only five in its motion, stating that one company declined to participate at the last minute. The five are: (1) Allied (2) NMR; (3) Brandenburg; (4) DHL and (5) Northshore

---

[6] *See, e.g.*, Baranetsky Decl., Ex. AA. In March 2019, a member of Congress wrote to the DOL stating that EEO-1 Reports should not be withheld under Exemption 4, as they "enumerate the diversity of firms accepting the taxpayer money." *Id.*, Ex. AB (letter from Emmanuel Cleaver II, Member of Congress, U.S. House of Representatives, to Alexander Acosta, Secretary of U.S. Department of Labor).

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

(collectively, "the bellweather contractors"). Dkt. 34 at 5. DOL submitted only four contractors' declarations with its motion, but submitted a fifth the following week. *See id.* at n.2.

## IV.    ARGUMENT

### A.    LEGAL STANDARD

"FOIA was enacted 'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *A.C.L.U. v. U.S. D.O.J.*, 880 F.3d 473, 482-83 (9th Cir. 2018) (citation omitted). While FOIA contains exemptions, they "are to be narrowly construed" and "the government has the burden of justifying withholding under any of FOIA's exemptions." *Id.* at 483 (citations omitted). "Most FOIA cases are resolved by the district court on summary judgment." *Animal Legal Defense Fund v. U.S. F.D.A.*, 836 F.3d 987, 989 (9th Cir. 2016) (en banc). But "there is no principled distinction to be drawn between our usual summary judgment standard and the standard to be applied in FOIA cases." *Id.* As always, the Court should grant summary judgment if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### B.    DOJ'S EXEMPTION 4 AND TRADE SECRETS ACT CLAIMS ARE PRECLUDED.

The doctrine of collateral estoppel, or "issue preclusion," bars "the relitigation of issues previously tried and decided in a court of competent jurisdiction involving the same parties." *Kissi v. EMC Mortg. Corp.*, 887 F. Supp. 2d 1, 6-7 (D.D.C. 2012). It "can apply to preclude relitigation of both issues of law and issues of fact." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 170–71 (1984) (citation omitted). In the Ninth Circuit, "[t]o foreclose relitigation" under collateral estoppel, the issue at stake: (1) must be identical to the one alleged in the prior litigation; (2) must have been actually litigated; and (3) its determination must have been a critical and necessary part of the judgment. *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir.1992). Collateral estoppel applies to the government, *see H.L. v. Matheson*, 450 U.S. 398, 406 (1981), including in FOIA cases in which both parties were also parties to the underlying action. *See Nat'l Treas. Employees Union v. I.R.S.*, 765 F.2d 1174, 1175–78 (D.C. Cir. 1985) (Ginsburg, J.); *Osen LLC v. U.S. Central Command*, Case No. 18-CV-6069

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

(BCM), 2019 WL 4805805, at **5-10 (S.D.N.Y. Sept. 30, 2019).

*CIR I* collaterally estops DOL from asserting Exemption 4 and the Trade Secret Act. In *CIR I*, this court ordered DOL to comply with CIR's FOIA request for the same EEO-1 Reports for just 50 federal contractors submitted for the 2016 fiscal year. *See Nat'l Treas. Employees Union*, 765 F.2d at 1177 (applying collateral estoppel in a FOIA case where "the FOIA requests in the two actions [were] identical except for the year involved"). *CIR I* held that Exemption 4 did not apply, since EEO-1 Reports do not contain "commercial" information and disclosure would not cause foreseeable harm.[7] 424 F. Supp. 3d at 777–80. By not appealing, DOL accepted that result. Baranetsky Decl. ¶ 4. *CIR I* also collaterally estops DOL from taking the position that EEO-1 Reports are covered by the Trade Secrets Act, because the *CIR I*'s holding that EEO-1 Reports are not "commercial" also disposes of the contention that they are protected under that law. *See Synopsys, Inc. v. U.S. Dep't of Labor*, No. 20-16414, 2022 WL 1501094, at *4 n.3 (9th Cir. May 12, 2022) (stating that, "the district court's holding that Synopsys's EEO-1 report was outside the scope of Exemption 4 would necessarily mean that that report was also outside the scope of the Trade Secrets Act").

DOL's position runs headlong into *CIR I* which is plainly dispositive. *CIR I* was not limited in any way. Its analysis addressed *all* EEO-1 Reports comprehensively – and their data. CIR and DOL "actually litigated" the "commercial" and foreseeable harm issues in extensive briefing and at a hearing. Baranetsky Decl. ¶¶ 4-5, Ex. D. The "commercial" and "foreseeable harm" holdings were also "critical and necessary" parts of *CIR I*'s judgment. DOL is collaterally estopped from making repeated arguments here.

**C.    EXEMPTION 4 AND § 1905 DO NOT APPLY TO EEO-1 REPORTS.**

FOIA Exemption 4 allows an agency to withhold "matters that are . . . trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Its purpose is to "balance the strong public interest in favor of disclosure against the right of private businesses to protect sensitive information." *GC Micro Corp. v. Def.*

---

[7] The Court also considered trade secrecy and confidentiality arguments. It stated that there was a significant possibility the reports were not confidential but did not rule on the issue. *Id*. at 780.

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

*Logistics Agency*, 33 F.3d 1109, 1115 (9th Cir. 1994), *overruled on other grounds by Animal Legal Defense Fund*, 836 F.3d 987. Courts have often held that Exemption 4's trade secret clause and § 1905 are the "same" or "co-extensive." *Pac. Architects & Eng'rs Inc. v. U.S. Dep't of State*, 906 F.2d 1345, 1347 (9th Cir. 1990) (citation omitted). DOL cannot meet its burden here. That is, DOL has not and cannot show that the EEO-1 Reports at issue are trade secrets, "commercial," or "confidential" – even under the United States Supreme Court's recent *Argus Leader* decision.

### 1. An EEO-1 Report Is Not a Trade Secret Under FOIA or § 1905.

First, EEO-1 data plainly does not meet the stringent "trade secret" definition in either Exemption 4 or § 1905. Courts have held that the definitions of "trade secret" in Exemption 4 and § 1905 ("TSA") are "co-extensive." *Pac. Architects & Eng'rs Inc. v. U.S. Dep't of State*, 906 F.2d 1345, 1347 (9th Cir. 1990). Information qualifies as a "trade secret" only if it is inherently "secret," economically valuable, and directly related to "the productive process", not "collateral matters of business." *Pub. Citizen Health Research Grp. v. F.D.A.*, 704 F.2d 1280, 1287 (D.C. Cir. 1983). This term is strictly limited to a "plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort," not "tangential" information. *Id.* at 1288–90.

According to this definition EEO-1 Reports are plainly not trade secret. First, EEO-1 Reports are not secret. They are disclosed to DOL and contractors know DOL may publish them pursuant to court order in a FOIA action – especially where, as here, at least one federal court has already held, without appellate challenge by DOL, that EEO-1 Reports are not protected by Exemption 4 and must be disclosed – and DOL has disclosed them. *See Taylor v. Babbitt*, 760 F. Supp. 2d 80, 86 (D.D.C. 2011); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011 n.15 (1984). Contractors also regularly publish this information themselves or it is discoverable online. Bendick Decl. ¶¶ 27-28, 31, 34; Williams Decl. ¶ 16.[8] Third, the information in EEO-1 Reports lacks a "direct relationship" to the "productive process," *Cf. Pub. Citizen*, 704 F.2d at 1288, and

---

[8] *See also* https://diversiq.com/eeo-1-report-download/ 15 ("the majority (74%) of S&P 500 companies disclos[ed EEO-1 Reports]" by 2023).

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

EEO-1 Reports are not commercially-valuable in themselves. Bendick Decl. ¶¶ 7-25, 42; Williams Decl. ¶¶ 11-16. To argue that this test applies, contractors would have to take the implausible position that the race and gender of its employees is a "plan, formula, process, or device . . . used for the making, preparing, compounding, or processing of trade commodities" – a bizarre if not disturbing conclusion. *Id. See also Citizens Comm'n on Human Rights v. F.D.A.*, No. 92-CV-5313, 1993 WL 1610471 at *7 (C.D. Cal. May 10, 1993), *aff'd in part and remanded in part on other grounds*, 45 F.3d 1325 (9th Cir. 1995).

Perhaps recognizing the futility of arguing that EEO-1 Reports are "trade secret," DOL also contends that EEO-1 data is protected by the Trade Secrets Act's "confidential statistical data" language. Not so. First, the TSA only encapsulates trade secrets. Regardless, this court and others have expressed opprobrium for the government's "expansive interpretation" of § 1905 being applied to "statistical information pertaining to employees." *See CIR I*, 424 F. Supp. 3d at 779 (expressing skepticism that the records are confidential); *Citizens for Resp. & Ethics in Washington v. United States Dep't of Just.*, 58 F.4th 1255, 1266-69 (D.C. Cir. 2023) (stating that the names of contractors were not trade secrets or "commercial" information under FOIA); *see also* Bendick Decl. ¶¶ 27-28, 31, 34, 42; Williams Decl. ¶¶ 11-16. Further, if "confidential statistical data" could be read as broadly as DOL contends, it would be dangeourously expansive.

Regardless, the TSA cannot independently justify nondisclosure. *See JCI Metal Prod. v. U.S. Dep't of the Navy*, No. 09-CV-2139-IEG, 2010 WL 2925436, at *8 (S.D. Cal. July 23, 2010) (TSA "cannot override the FOIA's obligatory disclosure provisions," and that "if the information is not protected by Exemption 4, it is not protected by the [TSA]" [citation omitted]); *see also CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1136, 1141 (D.C. Cir. 1987) (TSA is not a FOIA withholding statute under under Exemption 3). The question in this case is whether Exemption 4, not the TSA, applies – and Exemption 4 does not apply for the reasons stated below.[9]

**2.    EEO-1 Reports Are Not "Commercial" under Exemption 4.**

---

[9] If DOL condends EEO-1 Reports contain trade secrets, it essentially waived that argument by omitting it in *CIR I. Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992).

10

Similarly straightforward, as *CIR I* held, EEO-1 Reports are not "commercial" under Exemption 4. FOIA does not define "commercial," but courts have "consistently held" that the term "commercial. . . in the exemption [4 context] should be given [its] ordinary meaning[.]" *Pub. Citizen v. F.D.A.*, 704 F.2d at 1290; *accord Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1194 (9th Cir. 2011). The Ninth Circuit defined this ordinary meaning: "[i]nformation is commercial if it relates to ***commerce, trade, or profit***." *Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1128-30 (9th Cir. 2007) (citation omitted, emphasis added). The Ninth Circuit narrowed that definition further in *Watkins*, holding that records are "of a commercial nature" only if "intimately" related to the business activity of a company, *i.e.*, the income-producing aspects. 643 F.3d at 1194; *see also Carlson*, 504 F.3d at 1129.

Applying this test in *Watkins*, the Ninth Circuit found documents detailing the process for importing goods were "commercial" only because they "disclose[d] intimate aspects of an importers [sic] business such as supply chains and fluctuations of demand for merchandise." *Id.* at 1195. Lower courts in this Circuit have therefore extended commerciality to articles of commerce or obvious business plans, but never records as attenuated from a business function as the records at issue here. *Cf. Starkey v. U.S. Dep't of Interior*, 238 F. Supp. 2d 1188, 1195 (S.D. Cal. 2002) (finding information on a Native American tribe's water supply was "commercial or financial" in nature" because it pertained to well water, "an article of commerce").

Conversely, many courts – including this one – have held that records that are too attenuated from commercial aspects of a business cannot be considered commercial in nature. For instance, in *Carlson*, the Ninth Circuit found that even though mail is "essential to commerce and trade" and the requested postal information, including "names, addresses, telephone numbers, and regular business hours," had a *putative* commercial value, it "is not commercial." 504 F.3d at 1129; *see also*, *Pub. Citizen v. D.H.S.*, 975 F. Supp. 2d 81, 103–04 (D.D.C. 2013) (name, title, and responsibilities is not commercial). Even if records might provide some "insight into the nature of a company's business dealings," that is not sufficient to "convert the [records] into commercial" data. *Nat'l Bus. Aviation Ass'n, Inc. v. F.A.A.*, 686 F.Supp.2d 80, 86–7 (D.D.C.

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

2010); *see also New York Times Co.*, No. 19 CIV. 1424 (KPF), 2021 WL 371784, at *13 (S.D.N.Y. Feb. 3, 2021).[10]

Courts have been particularly careful to avoid holding that employee information, like the information in EEO-1 Reports, is commercial. *See, e.g.*, *Van Bourg, Allen,Weinberg & Roger v. N.L.R.B.*, 728 F.2d 1270, 1272-73 (9th Cir. 1984). The '*Excelsior* lists' line of cases from 1991 onward demonstrates this point. *See Getman v. N.L.R.B.*, 450 F.2d 670 (D.C. Cir. 1971). An *Excelsior* list[11] is a NLRB document that contains the names and home addresses of all employees eligible to vote in certain elections. *Id.* at 671. The D.C. Circuit held that Exemption 4 was "simply inapplicable" to this employee data. *Id.* at 673; *see also Pub. Citizen v. U.S. Dep't of Health & Human Servs.*, 975 F. Supp. 2d 81, 105–06 (D.D.C. 2013). The *Getman* court reasoned, employee data could not "be fairly characterized as . . . 'financial' or 'commercial' information" and were "[o]bviously . . . not exempted from disclosure by [Exemption] 4." 450 F.2d at 673. The Ninth Circuit has adopted the D.C. Circuit's reasoning on this point wholesale, *Van Bourg*, 728 F.2d at 1272–73 ("the [data] cannot fairly be characterized as either 'trade secrets' or 'commercial or financial'"), and other courts have recently reaffirmed it. *Besson v. U.S. Dep't of Commerce*, 480 F. Supp. 3d 105, 113 (D.D.C. 2020) (stating employee data "did not create insight into [a company's] business strategy or capabilities or any unique risk of poaching.") Still, DOL contends here that EEO-1 Reports could reveal the type of jobs, the year-to-year changes, or the employer's business plans and growth. Dkt. 34 at 11-16. This argument fails for three reasons.

First, the law of this Circuit, stated in *Watkins, Carlson* and *Van Bourg*, prevents holding that EEO-1 data is "commercial," because it is too attenuated from the commercial aspects of the business. Bendick Decl. ¶¶ 7-36, 42; Williams Decl. ¶¶ 11-16; *see also Skybridge Spectrum*

---

[10] In *The N.Y. Times Co.*, the court comprehensively stated: "information is commercial only when intertwined with other [commercial] information…such as (i) sales statistics, profits and losses, and inventories; (ii) references to finance functions, mergers and acquisitions practices, and sales and marketing, or information about country operations, projects, contracts, and bids; (iii) information about interactions between the companies' salespeople and customers, or how the companies promote their products; and (iv) extensive information about the [company's] marketing and sales programs…"). *New York Times Co.*, 2021 WL 371784, at *12 (citations omitted). None of these categories apply here.

[11] Named for the decision requiring their maintenance, *Excelsior Underwear, Inc.*, 156 N.L.R.B. 1236 (1966).

CANNATA, O'TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

*Found. v. F.C.C.*, No. 10-01496, 2012 WL 336160 at *12 (D.D.C. 2012); *Merit Energy Co. v. U.S. Dep't of Interior*, 180 F.Supp.2d 1184, 1188 (D. Colo. 2001); *New Hampshire Right to Life v. U.S. Dep't of Health & Human Servs.*, 778 F.3d 43, 47 (1st Cir. 2015); *New York Times Co.*, 2021 WL 371784, at *8 ("Whatever commercial or financial means at the margins, at its core are records that reveal basic commercial operations . . . or relate to the income-producing aspects of a business.") (citation omitted). A DOL declarant even admits to the vagueness of these records. Jasinowski Decl. ¶¶ 25-26 (stating EEO-1 data "without context" leaves room for "misinterpretation" and EEO-1 "does not . . . explain resource allocation across its segments").

In fact, this Court has previously applied that logic to this exact issue to reach this conclusion. *CIR I*, 424 F. Supp. 3d at 777. In *CIR I* the court explained the records were not commercial because there was not a requisite level of detail, so the records were too attenuated. *Id.* at 778–79 ("the documents found to be commercial in *100Reporters* reflect a level of detail not contained in the EEO-1 reports."). The Court explained the EEO-1 form does not call for or contain "salary information, sales figures, departmental staffing levels, or other identifying information in these reports," *id.* at 777, and further "note[d] that the EEO-1 form does not [show] how resources are allocated across a company's . . . [but] organized by [generalized] job category[ies], such as 'Professionals,' 'Sales Workers,' 'Operatives.'" *Id.* This more general non-commercial formulation presumably exists because DOL uses EEO-1 Reports for a non-commercial purpose: to evaluate discrimination, not profitability. Dkt. 34 at 5; Hodge Decl. ¶ 11 (stating EEO-1s are only used to help OFCCP target potential investigations).[12]

Second, EEO-1 Reports are not "commercial" for the same reasons that courts have held employee data (which EEO-1 Reports contain) is not "commercial." *See supra.* Those cases control here. A report on employee diversity, like a list of employee names and addresses, is not "commercial" because it concerns employees, not "commerce, trade, or profit." *See Carlson*, 504 F.3d at 1129. Finding otherwise would upend three decades of case law, including the *Excelsior* cases.

---

[12] Even if diversity ostensibly benefits profitability, a company would likely create a different, more precise form that would accurately calculate profit.

13

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

Finally, the government's declarations are not specific enough to meet the government's burden. They are almost entirely comprised of conclusory assertions, like "Human capital is a core commercial resource." Dkt. 34 at 12. They are mute as to how EEO-1 Reports could possibly disclose contractors' financial information, like payment data or serve *any* commercial function under the plain meaning of the term. *See* Jasinowski Decl. ¶¶ 15-16 (stating abstractly that disclosing Diversity Reports "provides insights into Brendenburg's recruitment and retention strategies"); Barcon Decl. ¶ 10 (stating EEO-1 data "is commercially valuable" for DHL).[13] The Court should hold, as in *CIR I*, that EEO-1 Reports are not commercial under Exemption 4.

### 3. Diversity Reports Are Not Confidential Under Exemption 4.

In *Argus Leader*, the Supreme Court announced a new test for Exemption 4 and held that the records were as "confidential" if the "information is both *customarily* and *actually* treated as private by its owner." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (emphasis added). The Court suggested that the question of whether information is "customarily and actually" confidential can be determined by looking at the custom and practices of the particular company *as well as* the industry standards. *See, e.g.*, *Argus Leader*, 139 S. Ct. 2356, 2363 (stating "retailers customarily do not disclose…data"). *Argus Leader* also stated records are confidential if the information is "provided to the government under an assurance of privacy," *id*. at 2363, 2366. While the Court stopped short of holding that "assurance of privacy" was a necessary prong, courts have held this information is probative. *See Am. Soc'y for Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.*, No. 19 Civ. 3112 (NRB), 2021 WL 1163627, at *14–15 (S.D.N.Y. Mar. 25, 2021). The agency must show these elements with more than "conclusory and generalized allegations," *Nat'l Parks & Conservation Ass'n v.*

---

[13] DOL cites to *Pub. Citizen Health Research Grp.*, 704 F.2d at 1290 for its "broad[]" definition of commerciality, but that case is distinguishable as it dealt with clearly commercial records: sales statistics and profits. Regardless, employing even this broader definition of "commercial" to include EEO-1 Reports would risk bloating the term, potentially swallowing much of FOIA as government tasks are increasingly executed by private industry, and if *any* business records can become commercial, too many would be out of the public view. *New York Times Co.*, 2021 WL 371784, at *9–14 (rejecting argument that all information for VW's program is "commercial.").

*Kleppe*, 547 F.2d 673, 680-81 (D.C. Cir. 1976), it must provide "specific factual or evidentiary material." *Id.* at 679. Here, the DOL cannot meet this burden for several reasons.

First, EEO-1 Reports are not confidential because industry standard is to disclose EEO-1 data. Bendick Decl. ¶¶ 13; Baranetsky Decl. ¶ 23. In *Argus Leader* the Court held that the information had to be "*both* customarily *and* actually treated as private." 139 S. Ct. at 2366. To determine whether information was "customarily" confidential, the Supreme Court considered an industry association's treatment of the information, in addition to the particular business' practice. *Id*. at 2363 ("[T]he Institute's retailers customarily do not disclose store-level SNAP data or make it publicly available."). While the D.C. Circuit has focused on the "particular party['s]" treatment of the data, the Ninth Circuit's analysis has followed *Argus Leader*'s example on this point, and considers how other businesses "customarily" treat the type of data at issue. *Compare Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin*., 244 F.3d 144, 148 (D.C. Cir. 2001), *with Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*, 802 F. App'x 309, 310 (9th Cir. 2020) (declarations from "NABR members" imply 'customarily').

Consistent with the Ninth Circuit, this Court has considered industry custom when evaluating confidentiality post-*Argus Leader*. *See Ctr. for Investigative Reporting v. Dep't of Lab.*, No. 18-CV-02414-DMR, 2020 WL 2995209, at *4 (N.D. Cal. June 4, 2020) (taking industry comments into account); *Am. Small Bus. League v. U.S. Dep't of Def.*, 411 F. Supp. 3d 824, 832 (N.D. Cal. 2019) (noting that plaintiffs can "point to other competitors who release the information" to stop defendants from crying confidential for every document); *CIR I*, 470 F. Supp. 3d 1096, 1113 (N.D. Cal. 2020) (citing *ASBL* to look at "practices" such as competitors' disclosures to "defeat these 'magic words'" tactics). Courts outside this Circuit have also endorsed this idea. *See, e.g., N.Y. Times Co. v. U.S. Food & Drug Admin.*, No. 19-CV-4740 (VEC), 2021 WL 1178126, at *15 (S.D.N.Y. Mar. 29, 2021) (citing *ASBL* for consideration of competitors' practices); *WP Co. v. U.S. Small Bus. Admin.*, 502 F. Supp. 3d 1, 13 (D.D.C. 2020) (similar).

15

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

Here, EEO-1 Reports are not "customarily" confidential because diversity statistics are not customarily treated as private. Various companies have repeatedly published these records and, it is indeed now industry standard to post EEO-1 Reports on company websites. *See supra at* II.D. To date, over 74% of the S&P 500 companies disclose EEO-1s. https://diversiq.com/eeo-1-report-download/; *see also* Baranetsky Decl. ¶ 24, Exs. U-W, AF. This lawsuit itself confirms this industry norm, as 19,289 federal contractors chose not to object to EEO-1 Report disclosure in this litigation, while a relatively small minority, about 4,000, objected. *Id.* ¶ 23; Dkt. 34 at 7-8.

Indeed, multiple companies that objected to release of the Diversity Reports in prior years have since not only disclosed their EEO-1 Reports, but also attested to the benefits of disclosure. *See, e.g.*, Baranetksy Decl., Ex. AG. Similarly, PayPal, which initially fought the release of its EEO-1 Reports, now shares its annual reports, as do other large federal cotnractors like "Raytheon and Boeing, which ranked among the highest recipients of federal contract dollars in 2020, as well as familiar names like Moderna, Pfizer, A&E Television Network and Sherwin-Williams." Baranetsky Decl., Ex. AC (CIR article).

Moreover, even the companies that continue to object to the release of their EEO-1 Reports often release some kind of diversity data online themselves. *Id.* (mentioning objecting companies, like Dell, which publishes its own curated diversity report online). Some objecting companies have even provided EEO-1 Reports in full to Plaintiffs when asked. *Id.* ("But when [Merck] asked about its objection, the company provided Reveal all five years of data anyway.") This industry custom is becoming so standard that the SEC is considering to make disclosure the default rule, particularly as companies already publish the number of employees in their annual reports, and various states require publication of some type of data.[14]

Second, the information contained in EEO-1 Reports – extremely high-level diversity data – is not *actually* treated as confidential. *Argus Leader* underscored that records were confidential if companies "actually" treated their information "as private." 139 S. Ct. at 2366. To determine

---

[14] *See, e.g.*, Andrew Ramanos, *SEC Panel Set to Push Workforce Diversity Reporting Requirements*, Sept. 14, 2023, BloombergLaw, https://shorturl.at/oqJU8; Byron Dailey, *California State to Require Venture Capital Companies to Collect Diversity Data*, Oct. 11, 2023, Fenwick, https://shorturl.at/imDU4.

whether a company "actually" treats records as secret, courts consider whether the information is closely held or available to the public. *See Argus Leader*, 139 S. Ct. at 2356, 2363 (stating that "the Institute's retailers customarily do not disclose store-level SNAP data or make it publicly available '*in any way*'" and "[e]ven within a company. . . only small groups of employees usually have access to it"); *Renewable Fuels Ass'n v. E.P.A.*, 519 F. Supp. 3d 1, 11 (D.D.C. 2021) (sharing skepticism on "EPA's confidentiality determinations" where companies closely held a petition one year and disclosed in other years).

Here, records are not *actually* held confidential where most of the objecting federal contractors, including the bellweather contractors have published some kinds of EEO-1 data on their own websites or in annual reports. *See infra* at 22-23 (citing Bendick Decl. ¶¶ 26-28 discussing EEO-1 data on the internet); *see also* Roberson Decl. ¶ 28 (admitting "some diversity data are publicly available"); Jasinowski Decl. ¶ 3 (listing the number of employees); Baxter Decl. ¶ 9 (confirming that the number of US employees is public). Even DHL which states "organization-wide employment numbers" are confidential, Barcon Decl. ¶ 9, publishes this information on the second page of its annual report, as do many other companies. *See, e.g.*, Baranetsky Decl., Ex. AD (DHL 2022 report listing number of employees). Also, some objecting companies (not in the bellweather motion) like Lockheed Martin and Merck have disclosed EEO-1 Reports. *Id.*, Ex. AC (stating Lockheed Martin shared its 2021 EEO-1 report online and Merck disclosed five years of records to Plaintiffs).[15] So while DOL makes conclusory remarks about the actual confidentiality of EEO-1 Reports, companies are *actually* sharing them.[16]

---

[15] Other companies that object to disclosure have published their EEO-1 Reports voluntarily in prior years. *See* Baranetsky Decl., Ex. B. As previously discussed, this data is also not confidential as it is shared with DOL employees with knowledge that DOL may disclose it.
[16] DOJ also argues these companies actually treat EEO-1 Reports as confidential because they are stored in encrypted servers and only select employees can access them. *See* Dkt. 34 at 18 (stating "high-security storage systems that is password protected" and "[a]ccess is limited to a handful of employees"). But these companies admittedly only hold the EEO-1 Reports under secure measures because they store them with other personal human resources data, as stated in the company declarations. *See, e.g.*, Barcon Decl. ¶ 11 (stating DHL generally protects "staffing strategies and its personnel activities"); Baxter Decl. ¶ 17 (stating "Allied Universal stores "raw employment-related data that underlies its EEO-1 reports is stored in a highly-secure Human Resources Information System."). But EEO-1 Reports themselves do not contain any "staffing strategies or identifying information," let alone any personnel matters.

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

This information is also not actually confidential because it is often visible to employees and shared by them. For instance, the public can turn to sites like Opendiversitydata.org or Glassdoor.com where employees post about the diversity of various companies. Baranetsky Decl., Exs. AE-AF. Indeed academics have for years relied on public diversity data. *Id.*, Ex. AI.

Last, DOL has not proven, and cannot prove, that it gave or obtained EEO-1 Reports based on a sufficient "assurance" of confidentiality. *Argus Leader*, 139 S. Ct. at 2366. (stating information *could* be withheld with assurance of privacy). A "growing chorus" of courts since *Argus Leader* have agreed that "Exemption 4 does not apply when an agency publicly acknowledges that it will not treat information as confidential." *Am. Soc'y for Prevention of Cruelty to Animals*, 19 Civ. 3112 (NRB), at *5. Similarly, Courts consider an agency's actions to evaluate the sufficiency of an assurance of privacy. *Id.*; *Pub. Justice Found. v. Farm Serv. Agency*, 538 F. Supp. 3d 934, 941-43 (N.D. Cal. 2021) (denying Exemption 4 where there was no assurance of privacy based on agency actions). Here, the DOL fails to show that it provided an assurance of privacy, express or implied. To the contrary, DOL submits that it publicly acknowledged the possibility of disclosure and that EEO-1 Reports are subject to FOIA. Moreover, past disclosures—including DOL's court-ordered disclosures in *CIR I*, which DOL did not appeal—further undermine claims that an assurance was provided. Baranetsky Decl. ¶ 3-4, 24.

DOL argues that it expressly assured EEO-1 Reports would be private by stating, "reports will be treated as confidential information to the maximum ***extent permitted by law***." Dkt. 34 at 19 (emphasis added). But this qualified statement is not an assurance of confidentiality, especially where this promise is conditioned on the "extent permitted by law." Moreover, while DOL stated to federal contractors that EEOC is prohibited from disclosing EEO-1 Reports, Dkt. 34 at 6, that has no bearing here as it does not apply to OFCCP. *See* Dkt. 34 at 5 (admitting Title VII "does not apply on its face to OFCCP"). OFCCP has stated that EEO-1 Reports may be released pursuant to FOIA on the federal register, in online publications, in other materials, and in this lawsuit. *See supra* at fn. 4-5 (federal register notices).

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

DOL's actual practice further undermines the notion that it provided a sufficient assurance of confidentiality. OFCCP has previously released EEO-1 Reports in response to multiple FOIA requests.[17] Baranetsky Decl. ¶¶ 3-4, 24. OFCCP released EEO-1 Reports for 2015 to Plaintiffs. *Id*. OFCCP has also released EEO-1 Reports to other media outlets in recent years, including CNN and the *San Jose Mercury News*. OFCCP is now also publishing EEO-1 Reports of all non-opposing contractors on its website (while conversely adamantly defending contractors opposing disclosure). "Courts find that when there is behavior by the agency showing disclosure is possible, records cannot be confidential." *Am. Soc'y for Prevention of Cruelty*, 19 Civ. 3112 (NRB), at *5 (stating dealers "were on notice that it was the Agencies' policy to release that information in response to a FOIA"). Thus, while the objecting contractors' declarations state that they rely on the OFCCP's assurance that it will protect EEO-1 Reports to the "maximum extent possible," Baxter Decl. ¶ 27; Barcon Decl. ¶ 16, Sobieski Decl. ¶24; Jasinowski Decl. ¶ 23, any such reliance was and is not objectively reasonable given there was no assurance of privacy — explicit or implied, but instead a clear notice of possible disclosure was given.[18]

### D.    DISCLOSURE OF EEO-1 REPORTS WOULD CAUSE NO FORESEEABLE HARM.

In 2016, the OPEN FOIA Amendment added an additional and independent hurdle that heightens the requirements for withholding under FOIA called the "foreseeable harm" test.[19] 5 U.S.C. § 552 (a)(8)(A) ("FHT"). Under this test, an agency may withhold information only if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption . . . or disclosure is prohibited by law." *Id*. As always under FOIA, the agency bears "the burden of justifying any withholding" under the foreseeable harm standard. *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 98 (D.D.C. 2019).

---

[17] DOL states incorrectly that it only disclosed EEO-1 Reports in one "isolated" instance and only to Plaintiffs. Dkt. 34 at 20 n.8.

[18] Last, unlike circumstances where companies file data with an agency under an assurance of privacy in order to obtain a contract in return, here, EEO-1 Reports are required. Federal contractors cannot opt-out, under section 709(c) of CRA, they are compeled and the EEOC can obtain a court order. *See supra* at 4. Penalties may include termination and debarment from future contracts, *id.*, undermining that assurance is guaranteed in exchange for something.

[19] This standard, "codif[ies] a presumption of openness for agencies to follow when they respond to FOIA requests." 114 Cong. Rec. S1494 (Mar. 15, 2016), https://perma.cc/KQW7-655R (statement of Sen. Grassley).

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

DOL argues in the first instance, that the FHT doesn't apply because disclosure is prohibited by the Trade Secrets Act, Dkt. 34 at 23, but as already explained EEO-1 Reports are not protected by that statute. *See supra* III.C.1; *cf.* Dkt. 34 at 24 n.10 (DOL elides that "the court in *CIR I* did not consider . . . disclosure by the TSA"). Regardless, because the TSA does not apply, the FHT applies and DOL must meet it to justify withholding.

The foreseeable harm standard can only be met with a showing that a *specific harm* related to the particular exemption will result from the disclosure. *Machado Amadis v. Dep't of Justice*, 388 F. Supp. 3d 1, 20 (D.D.C. 2019). Because Exemption 4 seeks to protects "trade secrets and commercial or financial information" that is "privileged or confidential," 5 U.S.C. § 552 (b)(4), *Argus Leader*, 139 S. Ct. at 2366, the FHT requires DOL to show that a harm will in a particularized manner to the submitter's "commercial or financial interest." *Seife v. FDA*, 43 F.4th 231, 242 (2d Cir. 2022);[20] *CIR v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 113 (D.D.C. 2019) (observing in dicta that FHT requires causing "genuine harm to [the submitter's] economic or business interests" [citation omitted]). The agency must also show these harms are "reasonably foreseeable" according to an *objective* standpoint. *Machado Amadis*, 388 F. Supp 3d at 1.

Here, the government fails to show that a genuine commercial harm is at risk. Bendick Decl. ¶¶ 7-36; Williams Decl. ¶¶ 11-16. DOL enumerates two main "areas" of harm resulting from disclosure of EEO-1 Reports, but neither qualify under FHT. DOL's declarants focus on how disclosure would lead to (1) negative publicity, and (2) harm the contractor's hiring practices and retainment strategies. Neither apply.

First, "negative impressions" do not qualify, as multiple Circuits and this Court have previously agreed "Exemption 4 does not guard against mere embarrassment in the marketplace or reputational injury." *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 564 (D.C. Cir. 2010); *Gen. Elec. Co. v. U.S. Nuclear Regulatory Comm'n*, 750 F.2d 1394, 1402-03 (7th Cir. 1984) ("[T]he competitive harm that attends any embarrassing disclosure is not the sort of thing

---

[20] Here, making the same mistake as the agency in *Seife*, the DOL errantly relies on *Argus Leader* to define the scope of the interest protected by Exemption 4 as simply "the confidentiality of the record maintained by the person who submitted that record to the government." Dkt. 34 at 25..

that triggers exemption 4."); *Martech USA, Inc. v. Reich*, No. C-93-4137 EFL, 1993 WL

1483700, at *2 (N.D. Cal. Nov. 24, 1993) (same). Some of objecting companies have endured

public criticisms over lack of diversity but Exemption 4 does not apply to this injury. *Pub. Citizen

Health Research Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1291 (D.C. Cir. 1983).

Second, DOL has failed to allege the business harms to "hiring practices" and "retaining

strategies" in any concrete manner, alleging only vague potential harms – that are not concretely

commercial. Dkt. 34 at 26-27. *Amadis v. United States Dep't of State*, 971 F.3d 364, 371 (D.C.

Cir. 2020) (agency "cannot simply rely on 'generalized' assertions that disclosure 'could' chill

deliberations"); *Greenspan v. Bd. of Governors of Fed. Rsrv. Sys.*, 643 F. Supp. 3d 176, 186

(D.D.C. 2022) (agency must provide a focused and concrete demonstration of foreseeable harm).

For instance, the declarations offered by OFCCP discuss *speculative* harms that "disclosing the

EEO-1 information would "create a wealth of data that *can be used* by companies looking to

recruit." Dkt. 34 at 27 (citing Barcon Decl. ¶ 28; Baxter Decl. ¶ 31; Roberson Decl. ¶ 26). But an

agency may not "perfunctorily state" that disclosure might cause foreseeable harm, and must

"explain the foreseeable harm." *Rosenberg v. DOD*, 342 F. Supp. 3d 62, 78-79 (D.D.C. 2018).

As for the potential "insight into companies' confidential human resources management

strategies," Dkt. 34 at 26, again DOL is not clear what this means and the data is again so broad

that potential competitors would not be able to use it. Williams Decl. ¶ 11. This is why DOL

states that the reports "are not [even] used to draw conclusions about" discrimination because

they are too attenuated and vague. Dkt. 34 at 5. Regardless of DOL's characterizations, these

harms do not impact the commercial and proprietary interests Exemption 4 seeks to protect.

Unlike providing "sales statistics" or "profits and losses," *Pub. Citizen*, 704 F.2d at 1290, any

tangential insight to human resources is unlikely and not commercial. Thus, as the Court already

found in *CIR I*, DOL has not met its burden under the FHT. Bendick Decl. ¶ 18-20 (EEO-1 data

cannot cause even remote harm to companies).

DOL also fails to show a foreseeable confidential harm exists. The agency states,

"Congress has made it a crime for EEOC employees to disclose [EEO1s]", Dkt. 34 at 26, but that

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

statement does not apply to OFCCP, and moreover, DOL concedes that OFCCP may release data under FOIA. Also, as previously stated, this data is not confidential. *See* Bendick Decl. ¶¶ 26-28, 30; Williams Decl. ¶ 13. As an example, a Google search into the employee statistics of Allied Universal (one of the bellwether objectors) reveals: (1) an organizational breakdown listing all the business leaders in regional, business, and functional areas (complete with photos & bios on each individual) and (2) publicly available Environmental, Social and Governance reports that provide progress updates on the company's continuing DEI measures. Bendick Decl. ¶¶ 26-28. Almost all company SEC filings contain some EEO-1 information, such as the total "headcount." *Id.*

Further, because such information might understandably be more publicly accessible for large, publicly-traded federal contractors, CIR's declarant Dr. Marc Bendick worked with a research company to seek EEO-1 data for one of the smaller privately owned companies among the bellweather objectors, Brandenberg Industries. Bendick Decl. ¶ 28 The result proves just how publicly accessible generalized diversity information on a company's workforce is. Within minutes, this research provided "a 23 page report which included: (1) counts of employees…more detailed…than the…Type 2 Consolidated EEO-1; (2) an organization chart…;(4) names, job titles, locations, telephone numbers, and recently-verified email addresses for 124 key employees; (5) financial data and other indicators [of] stability." *Id.* Thus, given that the requested EEO-1 reports contain information that is of a type that is *not* held in confidence and regularly disclosed it cannot be *reasonably* foreseeable to create a concrete harm. [21]

//

//

---

[21] *Am. Small Bus. League v. U.S. Dep't of Defense* ("*ASBL*"), 411 F. Supp. 3d 824, 835-36 (N.D. Cal. 2019) does not require otherwise despite having found a foreseeable harm in that case.  First, CIR I collaterally estops DOL from asserting foreseeable harm as to EEO-1 Reports. Second, *ASBL* is distinguishable because the records at issue here are substantially different. Even if the relevant interest is confidentiality, EEO-1 Reports are not confidential. Third, case law since *ASBL* has considerably developed and held an agency must do more than prove just confidentiality to show foreseeable harm; it must "explain how disclosing, in whole or in part, the specific information withheld under Exemption 4 would . . . caus[e] genuine harm to the submitter's economic or business interests." *See, e.g., CIR v. CBP*, 436 F. Supp. 3d at 113. DOL and the bellwether companies have not met this more rigorous standard, either.

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

### E.    DOL'S EXEMPTION 6 CLAIM, RAISED IN A FOOTNOTE, FAILS.

DOL suggests in Footnote 3 of its brief that Exemption 6 might somehow apply to 413 objectors. Dkt. No. 38 [DOL Corrected MSJ] at 6:27-28.) That suggestion is incorrect, and falls far short of meeting DOL's burden to justify nondisclosure under Exemption 6 or otherwise. Exemption 6 prevents disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Even so, a sufficiently important public interest can outweigh a privacy interest. *See Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994).

Here, DOL has not met its burden as it has not shown *any* privacy interest of the 413 objectors. DOL presents no argument, evidence or explanation of why Exemption 6 applies. Regardless, as a matter of law, no privacy interest exists because EEO-1 Reports are not personnel or similar files and their data cannot be linked to a particular individual. *See Dep't of State* v. *Washington Post Co.*, 456 U.S. 595, 602, n. 4 (1982) ("Information unrelated to any particular person presumably would not satisfy the threshold test."). To the extent it is linked, Exemption 6 is not applicable when the data is not personal. *See Sims v. C.I.A.*, 642 F.2d 562, 574 (D.C. Cir.1980) (diversity data is not personal like health data or familial data); Bendick Decl. ¶¶ 7, 26-42, 30; Williams Decl. ¶¶ 7-23. Nevertheless, any *de minimus* privacy interest is outweighed by the public interest in access. *See CIR I*, 470 F. Supp. 3d at 1107.

### F.    DECLARATORY RELIEF SHOULD BE GRANTED FOR DOL'S FOIA VIOLATIONS

FOIA contains strict processing timelines that federal agencies must follow. 5 U.S.C. § 552(a)(6)(A)(i)(ii). It provides that an agency must make a determination on a FOIA request within 20 days after the receipt, unless exceptional circumstances specified in the statute are present, in which case it can extend its response time by a maximum of 10 days. *Id*. "A 'determination' need not be the full production of documents, but at a minimum the agency must inform the requester what documents it will produce and the exceptions it will claim." *Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1089 (N.D. Cal. 2015) (citation ommitted).

23

FOIA's plain language makes this mandatory and Courts, including in this Circuit, have stressed its importance. *Id.* at 1090 (stating that, when enacting FOIA, Congress recognized, "[E]xcessive delay…is often tantamount to denial. It is the intent of this bill that the affected agencies be required to respond to inquiries and administrative appeals within specific time limits." (citations omitted)); *see also Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, 1187 (N.D.Cal. 1998) (holding that "an agency's failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA"); *Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982) (holding that injunctive relief was appropriate to remedy the IRS's repeated delays in disclosing a single type of record). Even this court recently entered a declaratory judgment against an agency, stating that declaratory relief is available and appropriate where the agency has a pattern of violating FOIA's time limits, or has violated FOIA in a way that is likely to recur. *See Children's Earth Found.*, 85 F. Supp. 3d at 1089.

DOL's delays here were intentional, persistent, and extreme. CIR made its initial request in 2019. Baranetsky Decl. ¶ 10, Ex. J. DOL has since delayed at every juncture. First, DOL stated that this Court's decision in *CIR I* was not binding, then it asserted on October 2, 2020 that it could not say whether the requested records could be disclosed until it notified contractors. *Id.* ¶ 13, Ex. O. Eventually DOL provided notice in 2022 by publishing it in the federal register and citing 29 C.F.R. 70.26, and Executive Order 12,600, but it then further delayed its own objection deadlines. *Id.* ¶ 18.

Declaratory relief is also necessary and appropriate to prevent these injuries from recurring. DOL "does not have the authority to ignore unambiguous deadlines set by Congress." *NRDC, Inc. v. U.S. EPA*, 966 F.2d 1292, 1299-1300 (9th Cir. 1992); *see also id.* at 1300 (equitable factors "do not grant an executive agency the authority to bypass explicit congressional deadlines"). Congress set strict FOIA deadlines and "expected compliance," which declaratory relief is needed to achieve here. *See, e.g.*, *Ecological Rts. Found. v. FEMA*, No. 16-CV-05254-MEJ, 2017 WL 5972702, at *10 (N.D. Cal. Nov. 30, 2017) (granting declaratory relief where agency repeatedly failed to comply with FOIA's timelines); *Children's*

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

*Earth Found.*, 85 F. Supp. 3d at 1089-91 (same).

### G.    DOL MAY NOT WITHHOLD 621 EEO-1 REPORTS AS NONRESPONSIVENE.

When evaluating the scope of a FOIA request, courts must construe the language of a FOIA request liberally in favor of disclosure. *Yagman v. Pompeo*, 868 F.3d 1075, 1080–81 (9th Cir. 2017) (adopting liberal construction for FOIA requests.) To prove adequate production, an agency must submit detailed, nonconclusory declarations showing adequacy "beyond material doubt." *Transgender Law Center v. ICE*, 46 F.4th 771, 779–81 (9th Cir. 2022).

DOL has not met its burden as it concedes that it withheld 621 EEO-1 Reports as "nonresponsive." ECF No. 34-8 at 15; *see id.* (declaring that "a small subset of objections stated that their data was not responsive to the FOIA Request because they were not federal contractors"). DOL's narrow reading of the request wrongly excludes current and former contractors who submitted EEO-1 forms from 2017-2020 but did not obtain a contract during that time. It also excludes companies that *actually had* federal contracts from 2017-2020 worth less than $10,000, even though CIR asked for "*all* consolidated (Type 2) EEO-1 reports for *all* [contractors]" for those years. ECF No. 1-2. Data from thes 621 EEO-1 reports should be disclosed.

### V.    CONCLUSION

DOL's Exemption 4 claim is foreclosed by *CIR I*, which involved the same parties and turned on the same issues. Regardless, DOL has not met its burden to justify withholding under Exemption 4, the Trade Secrets Act, or any other law, particularly where no foreseeable harm exists. Nor has DOL justified its withholding of 621 EEO-1 reports as "nonresponsive." And, DOL has not justified, and cannot justify, its *five year* processing time for CIR's request. CIR's motion should be granted, and DOL's motion should be denied.

/ /

/ /

/ /

/ /

DATED: October 18, 2023         Respectfully submitted,


                                s/ *D. Victoria Baranetsky*
                                D. Victoria Baranetsky
                                THE CENTER FOR INVESTIGATIVE REPORTING
                                1400 65th St., Suite 200
                                Emeryville, CA 94608
                                vbaranetsky@revealnews.org
                                Telephone: (510) 982-2890


DATED: October 18, 2023         CANNATA, O'TOOLE & OLSON LLP


                                By:    */s/ Aaron R. Field*
                                       AARON R. FIELD

                                Therese Y. Cannata
                                Aaron R. Field
                                Zachary E. Colbeth

                                Attorneys for Plaintiffs
                                THE CENTER FOR INVESTIGATIVE REPORTING and
                                WILL EVANS