UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR,<br><br>Defendant. | Case No. 22-cv-07182-WHA<br><br>**SUPPLEMENTAL DECLARATION OF HELENE BAXTER IN SUPPORT OF DEFENDANT DEPARTMENT OF LABOR'S OPPOSITION TO PLAINTIFFS' MOTION** |

I, Helene Baxter, state as follows:

1. I am Vice President, Corporate Employment Counsel for Universal Services of America, LP d/b/a Allied Universal Security Services ("Allied Universal"). I submit this supplemental declaration in support of the United States Department of Labor's ("DOL's") Opposition to Plaintiffs' Cross-Motion for Summary Judgment in the above-captioned matter. I have personal knowledge of the following facts and if called to testify, I could and would competently testify thereto.

2. In my first Declaration in Support of Defendant's Motion for Summary Judgment, I explained why Allied Universal considers the information summarized in the EEO-1 reports, including Allied Universal's headcount numbers in different job categories, adjustments to those headcounts year-to-year, ratios between security guard positions (EEO-1 category 9) and client support and management positions, to be core commercial information. These staffing metrics are constantly monitored, analyzed, and adjusted by Allied Universal management.

3. Moreover, the data incorporated within Allied Universal's EEO-1 Type 2 reporting is commercially valuable to the Company because it is critical to its profitability and success. This is due in part to the fact that the disclosure of totals for Allied Universal's EEO-1 job category 9, "Service Workers," would mean the disclosure of Allied Universal's headcount for this critical job category. Security guard positions (falling within EEO-1 job category 9, "Service Worker") are those that directly

produce the vast majority of Allied Universal's revenue. Comparing this total with the totals associated with Allied Universal's employment of administrators (EEO-1 job category 6, "Administrative Support"), managers (EEO-1 job category 2, "First/Mid. Officials & Managers"), and executives (EEO-1 job category 1, "Executive/Sr. Officials & Managers") would provide competitors with inside, confidential information both on Allied Universal's total guard capacity, and also on the ratios Allied Universal maintains between security guard positions and client support and overhead positions, which constitutes key commercial information in light of Allied Universal's business model.

4. I am aware that Plaintiffs claim that this information may not be valuable because it is "broad and non-specific." This is not the case for Allied Universal. The EEO-1 reports contain specific information about the most critical job categories within the companies. In particular, as described above, EEO-1 Category 9 indicates fairly precisely the quantity of Allied Universal's core commercial asset—its security guards.

5. Allied Universal's concerns regarding the disclosure of its EEO-1 Type 2 data are specific to its industry and business model. These concerns may be distinct from employers in many other industries, who do not have their profit capacity and potential so directly tied to the employee population of a single EEO-1 job category, or to the interplay between a single category and other categories.

6. Further, Allied Universal's concerns regarding the disclosure of its EEO-1 Type 2 data are unique even within its industry (security guard services). Allied Universal is by far the largest private security guard provider in the United States. Given this position, Allied Universal's practices, staffing strategies, and standards influence and drive the practices, strategies, and standards of the U.S. security guard provider market as a whole. Allied Universal maintains its continued competitive advantage in this industry via its innovation with respect to its staffing and business models. Competitors are hungry for any additional information they can acquire about Allied Universal's headcount and staffing strategies in an effort to emulate or reverse engineer its successful operational framework. As such, the disclosure of Allied Universal's EEO-1 Type 2 data would result in a unique and specific impact to the Company that would be different from the potential impact to employers in other industries as well as to other employers within its own industry who do not maintain the influential

SUPPLEMENTAL DECLARATION OF HELENE BAXTER
No. 22-cv-07182-WHA                                    2

role maintained by Allied Universal.

7. I am aware that Plaintiffs claim that the EEO-1 numbers may be inaccurate or incomplete because they only count employees, and an employers' staff may include independent contractors or subcontractors. In the case of Allied Universal, this is far from being the case. While the specific totals are kept confidential as discussed in my prior Declaration, Allied Universal employs hundreds of thousands of individuals in security guard positions across the United States. Of the total number of security guard positions currently maintained by Allied Universal within the United States, fewer than 250 individuals work in such roles as a subcontractor for Allied Universal. In other words, of Allied Universal's total United States security guard staff, fewer than one thousandth of one percent of such staff are treated as non-employee contractors. These very few and limited roles generally involve highly unique or specialized situation where a traditional employment relationship is not feasible. In all other cases, Allied Universal strives to treat security guards as traditional employees. Accordingly, it is not the case that Allied Universal's EEO-1 numbers are inaccurate indicators of its staffing capabilities.

8. I am also aware that the Plaintiff has alleged that Allied Universal's Environmental, Social and Governance ("ESG") publications disclose or reveal information that would be contained within its EEO-1 Type 2 reporting. This is simply not true. I am familiar with Allied Universal's most recent report, "ESG Report 2022," wherein Allied Universal's ESG highlights and initiatives are outlined. This document does note that Allied Universal is the "third largest employer in North America" and the "seventh largest employer in the world." This report notes the total number of Allied employees worldwide and the total percentage (not number) of female employees and female managers in 2021 and 2022. However, none of these data points provide specific totals for Allied Universal's United States employees by job category or race/ethnicity, as is detailed in Allied Universal's EEO-1 Type 2 reports. That is confidential information that Allied Universal does not disclose. A copy of Allied Universal's ESG Report 2022 is attached as Exhibit A.

9. I am aware the Plaintiff alleges that Allied Universal features profiles of certain executive employees on its website. On this point, Allied Universal does provide public profiles of its North America Executive Leadership Team at https://www.aus.com/about-us/our-people/north-america-executive-leadership-team. Notably, the executives listed on this website are not exclusively those

working in or over the United States, as the individuals listed also cover areas such as Canada and Mexico. The executives listed on this page include 12 Regional Presidents, eight (8) Business Unit Presidents, and seven (7) Functional Leaders. The information provided for each individual includes a photograph, name, job title, and background information on the individual's role, skills, and/or career experience. These profiles do not provide statements or information for the purpose of confirming the sex or race/ethnicity of any of the executives.

10. The above-described information that Allied Universal provides regarding its North America Executive Leadership Team is specifically focused on the highest-ranking and most public-facing leadership roles within the Company. This information is intended to convey a sense of accountability and confidence to Allied Universal's customers, employees, and to the public. This information is not intended to tout, publicize, or disclose specific demographic information about any particular executive or about Allied Universal's executive and management staff as a whole.

11. Further, it should be noted that such profiles are provided for only a very limited subset of Allied Universal's upper management employees. As discussed herein and in my prior Declaration in this matter, Allied Universal seeks to keep its EEO-1 Type 2 data, which would disclose the number of individuals listed in EEO-1 job category 1 ("Executive/Senior Level Officials and Managers"), confidential. Allied Universal's policy of keeping such information confidential is in no way materially compromised by the publication of the above-noted 27 executive profiles. This is because the executives that are publicly profiled by Allied Universal represent far less than one percent of the total number of individuals employed by Allied Universal in its EEO-1 job category 1. Even where the 27 publicly profiled executives are compared to the smaller subset of those employees listed as "Executive" employees in job category 1.2a of Allied Universal's EEO-1 report, the 27 employees comprise a very small percentage of this total. As such, given the fact that such executive profile information is limited to the highest-ranking Allied Universal officials and given that this information in no way reveals any remotely substantial aspect of Allied Universal's EEO-1 job category 1 totals, the publication of this information does not provide headcount information and in no way impacts Allied Universal's treatment of its EEO-1 Type 2 information as valuable and confidential commercial information.

I declare under penalty of perjury under the laws of the United States that the foregoing is true

and correct.

Executed this 13th day of November, 2023, at Palm Beach County, Florida.

_____
HELENE BAXTER