D. VICTORIA BARANETSKY (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th Street, Suite 200
Emeryville, CA 94608
Telephone:    (510) 982-2890
Facsimile:    (510) 849-6141
Email:        vbaranetsky@revealnews.org

THERESE Y. CANNATA (SBN 88032)
AARON R. FIELD (SBN 310648)
ZACHARY E. COLBETH (SBN 297419)
CANNATA O'TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111
Telephone:    (415) 409-8900
Facsimile:    (415) 409-8904
Email:        tcannata@cofolaw.com
              afield@cofolaw.com
              zcolbeth@cofolaw.com

Attorneys for Plaintiffs
THE CENTER FOR INVESTIGATIVE
REPORTING and WILL EVANS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS,<br><br>        Plaintiffs,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF LABOR,<br><br>        Defendant. | Case No. 3:22-cv-07182-WHA<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        Dec 14, 2023<br>Time:        8:00 a.m.<br>Judge:       Hon. William Alsup |

CANNATA, O' TOOLE, & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................1

II. ARGUMENT ....................................................................................................1

  A. DOL Cannot Relitigate Identical Issues Already Decided in *CIR I*.............................1

  B. DOL Fails to Meet Its Burden to Show Exemption 4 Applies.....................................3

    1. EEO-1 Reports Are Not Commercial ....................................................................4

    2. EEO-1 Reports Are Not Confidential ................................................................10

    3. EEO-1 Reports Are Not Provided With an Assurance of Privacy..................14

  C. Disclosure of EEO-1 Reports Is Not Prohibited by the Trade Secrets Act And Would
    Cause No Foreseeable Harm...............................................................................14

    1. Disclosure Is Not Prohibited by the Trade Secrets Act....................................14

    2. Disclosure Would Cause No Foreseeable Harm................................................16

  D. DOL's "Agency Records" Justification For Withholding 621 Plainly Responsive
    EEO-1 Reports Fails .........................................................................................17

  E. Declaratory Relief Is Needed to Address DOL's Processing Delays.........................18

III. CONCLUSION ..............................................................................................18

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*A.C.L.U. v. U.S. D.O.J.*
  880 F.3d 473 (9th Cir. 2018)..................................................................................16

*Amadis v. Dep't of Justice*
  388 F.Supp.3d 1, 20 (D.D.C. 2019) ......................................................................17

*American Airlines, Inc. v. Nat'l Mediation Bd.*
  588 F.2d 863 (2d Cir. 1978)................................................................................6, 7

*Am. Soc'y for Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.*
  No. 19 CIV. 3112 (NRB), 2021 WL 1163627 (S.D.N.Y. Mar. 25, 2021)......................14

*Army Times Pub. Co v. U.S. Dep't of Air Force*
  998 F.2d 1067 (D.C. Cir. 1993) ............................................................................11

*Baker & Hostetler LLP v. U.S. Dep't of Commerce*
  473 F.3d 312 (D.C. Cir. 2006) ............................................................................5, 6

*Besson. v. U.S. Department of Commerce*
  480 F. Supp. 3d 105 (D.D.C. 2020) ..................................................................6, 7, 8

*Brockway v. Department of Air Force*
  518 F.2d 1184 (8th Cir. 1975) ...............................................................................6

*Carlson v. U.S. Postal Serv.*
  504 F.3d 1123 (9th Cir. 2007)..............................................................................4, 5

*Center for Investigative Reporting v. Department of Labor ("CIR I")*
  424 F. Supp. 3d 771 (N.D. Cal. 2019) ............................................................*passim*

*Children's Earth Found. v. Nat'l Marine Fisheries Serv.*
  85 F. Supp. 3d 1074 (N.D. Cal. 2015) ...................................................................18

*CNA Fin. Corp. v. Donovan*
  830 F.2d 1132 (D.C. Cir. 1987) ............................................................................13

*Critical Mass Energy Project v. Nuclear Regulatory Comm'n*
  830 F.2d 278 (D.C. Cir. 1987) ...............................................................................6

*Davin v. U.S. Dep't of Justice*
  60 F.3d 1043 (3d Cir. 1995)....................................................................................4

*Food Marketing Institute v. Argus Leader Media*
  139 S. Ct. 2356 (2019) .................................................................................*passim*

*Gen. Elec. Co. v. NRC*
  750 F.2d 1394 (7th Cir. 1984)..........................................................................15, 16

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

i

*Greenspan v. Bd. of Governors of Fed. Rsrv. Sys.*
    643 F. Supp. 3d (D.D.C. 2022) ................................................................. 16, 17

*Inner City Press/Community on the Move v. Bd. of Governors of Fed. Reserve Sys.*
    463 F.3d 239 (2d Cir. 2006) .................................................................. 13

*JCI Metal Prod. v. U.S. Dep't of the Navy*
    No. 09-CV-2139-IEG, 2010 WL 2925436 (S.D. Cal. July 23, 2010) ................. 15

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*
    375 F.Supp.3d 93 (D.D.C. 2019) ............................................................. 16

*Kewanee Oil Co. v. Bicron Corp.*
    416 U.S. 470 (1974) ............................................................................ 15

*Machado Amadis v. Dep't of Justice*
    388 F.Supp.3d 1 (D.D.C. 2019) .............................................................. 16

*Marzen v. U.S. Dep't of Health & Hum. Servs.*
    632 F. Supp. 785 (N.D. Ill. 1986) ........................................................... 18

*Mokhiber v. U.S. Dep't of Treasury*
    335 F. Supp. 2d 65 (D.D.C. 2004) .......................................................... 11

*Nat'l Treas. Employees Union v. I.R.S. ("NTEU")*
    765 F.2d 1174 (D.C. Cir. 1985) .............................................................. 2, 3

*NRDC, Inc. v. U.S. EPA*
    966 F.2d 1292 (9th Cir. 1992) ................................................................ 18

*New York Times Co.*
    No. 19 CIV. 1424 (KPF), 2021 WL 371784 (S.D.N.Y. Feb. 3, 2021) ............. 5

*News Grp. Boston, Inc. v. Nat'l R.R. Passenger Corp.*
    799 F. Supp. 1264 (D. Mass. 1992) ........................................................ 10

*Osen LLC v. U.S. Central Command, Case No. 18-CV-6069 (BCM)*
    No. 18-CV-6069 (BCM), 2019 WL 4805805 (S.D.N.Y. Sept. 30, 2019) ........ 1, 2, 3

*Pac. Architects & Engineers Inc. v. U.S. Dep't of State*
    906 F.2d 1345 (9th Cir. 1990) ................................................................ 15

*Pub. Citizen v. United States Dep't of Health & Hum. Servs.*
    975 F. Supp. 2d 81 (D.D.C. 2013) .......................................................... 5, 6

*Pub. Citizen Health Research Grp. v. U.S. Dep't of Health, Ed. & Welfare*
    477 F. Supp. 595, 605 (D.D.C. 1979) ..................................................... 5, 10

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

ii

*Reporters Comm. for Freedom of the Press v. F.B.I.*
    613 F. Supp. 3d 104 (D.D.C. 2020) ................................................................ 1

*Ruckelshaus v. Monsanto Co.*
    467 U.S. 986 (1984) ..................................................................................... 15

*Sears, Roebuck & Co. v. General Services Admin.*
    509 F.2d 527 (D.C. Cir. 1974) ...................................................................... 18

*Stonehill v. I.R.S.*
    534 F. Supp. 2d 1 (D.D.C. 2008) .................................................................... 3

*U.S. Dep't of Just. v. Tax Analysts*
    492 U.S. 136 (1989) ..................................................................................... 17

*Van Bourg, Allen, Weinberg & Roger v. N.I.R.B.*
    728 F.2d 1270 (9th Cir. 1984) ........................................................................ 4

*Washington Research Project, Inc. v. HEW*
    504 F.2d 238 (1974) ....................................................................................... 6

*Watkins v. U.S. Bureau of Cust. & Border Protec.*
    643 F.3d 1189 (9th Cir. 2011) ......................................................... 4, 5, 6, 13

*Whittaker Corp. v. Execuair Corp.*
    953 F.2d 510 (9th Cir. 1992) ........................................................................ 15

*Williams v. Taylor*
    529 U.S. 362 (2000) ....................................................................................... 4

*WP Co. LLC v. U.S. Small Bus. Admin.*
    575 F.Supp.3d 114 (D.D.C. 2021) ............................................................... 17

**FEDERAL STATUTES**

5 U.S.C. § 552 (a)(8) ............................................................................ 14, 16

5 U.S.C. § 552(e)(4) .................................................................................... 1

18 U.S.C. § 1905 ................................................................................. 14, 15

42 U.S.C. § 2000e-8(e) ............................................................................... 18

**OTHER AUTHORITIES**

Exec. Order No. 12600 ................................................................................ 11

3 C.F.R. § 1987 .......................................................................................... 11

iii

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

29 C.F.R. § 70.2(g)(5) ........................................................................................................ 11

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

iv

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

## I.      INTRODUCTION

Defendant United States Department of Labor ("DOL") continues to maintain that the generalized employee diversity data in consolidated EEO-1 Reports is confidential business information under FOIA Exemption 4. 5 U.S.C. § 552(e)(4).[1] That assertion is specious and far-fetched. To be clear: the EEO-1 Reports consist of a one-page form that certain federal contractors submit to OFCCP each year to show their compliance with federal anti-discrimination laws. *See* Hodge Decl. ¶ 26 (conceding that EEO-1 data helps DOL "proactively find and address discrimination"). The high-level data in government forms – is neither "commercial" or "confidential," and thus not covered by Exemption 4, as plaintiffs established and Judge Westmore rightly held in *Center for Investigative Reporting v. Department of Labor* ("*CIR I*"), 424 F. Supp. 3d 771 (N.D. Cal. 2019).

## II.      ARGUMENT

### A.      DOL Cannot Relitigate Identical Issues Already Decided in *CIR I*

DOL's attempt to escape the preclusive effect of *CIR I* should fail. DOL does not dispute that *CIR I* and this case involve the same parties. Both also turn on the same issues, which *CIR I* already decided in plaintiffs' favor, including whether EEO-1 Reports are "commercial" within the meaning of FOIA Exemption 4 and whether the foreseeable harm standard requires disclosure. DOL is estopped from relitigating these issues.

DOL strains to argue that collateral estoppel does not apply, citing the fact that this case and *CIR I* involved different evidence and did not involve "exactly the same" documents.[2] Dkt. No. 42 at 2:7-3:3, 3:12-5:23. However, the question here is whether

---

[1] The *five* bellwether objectors DOL chose (this Court required *six*) are just 0.10% of the total 4,796. DOL has stated it intends to identify the remaining objectors. U.S. Dep't of Lab., *Submitter Notice Response Portal Frequently Asked Questions: 17. Does the agency plan to release a list of companies who objected to the FOIA release of their EEO-1 data?*, https://shorturl.at/pzCLQ (visited Dec. 5, 2023). However, DOL has not done so. Without these identities, it is impossible to assess how representative the objectors chosen by DOL are.

[2] While one district court used that language, *Reporters Comm. for Freedom of the Press*, 613 F. Supp. 3d at 115, it did so *in dicta*. Also, *RCFP* involved a very different records in the two cases. *Id.* at 114-15. Regardless, other cases have found that issue preclusion applies even where records are meaningfully similar and need not be the same forms (as they are here). *See Osen LLC v. U.S. Cent. Cmd.*, Case No. 18-CV-6069 (BCM), 2019 WL 4805805, at **5-10 (S.D.N.Y. Sept. 30,

1

both cases involve the same issues and the same kind of information. In *CIR I*, Judge Westmore held that: (1) the kind of information in EEO-1 Reports is not "commercial" under Exemption 4 and (2) disclosure of that kind of data would not cause foreseeable harm. 424 F. Supp. 3d at 777-80. These holdings are also dispositive here.

The similar case of *Nat'l Treas. Employees Union v. I.R.S.* ("*NTEU*"), 765 F.2d 1174, 1175-78 (D.C. Cir. 1985) (Ginsburg, J.) proves this point. In *NTEU*, the D.C. Circuit noted that, in a prior case, the same plaintiff had sued the IRS under FOIA to compel disclosure of "Senior Executive Performance Objectives and Expectations" IRS forms "for the period 1980-1981." *Id.* at 1175. The district court in the prior case had held that the records should be disclosed "*except* for portions . . . which identify specific individual employees of the IRS" and the plaintiffs did not appeal. *Id.* (emphasis in original). The same plaintiffs then brought a second lawsuit seeking access to "the same forms" for 1981-82. *Id.* The court held that the plaintiffs' first case precluded their second case. *Id.* at 1177-78.

The court reasoned that both cases involved the same parties and issues and information "of the same kind," and the second case did not "fit within any sensible exception." 765 F.2d at 1177 & n.7. It elaborated that the legal climate had not changed in plaintiffs' favor, the requests in each case were identical except for the year involved, both cases implicated the same courts and procedures, and no other overriding concern warranted giving plaintiffs a chance to "start over." *Id.* It also emphasized the "important judicial concern[s]" that animate collateral estoppel, noted plaintiffs had chosen "to pass up the opportunity they had to appeal" in the first action, and explained that courts suffer from "crowded dockets" so " '[t]o allow that litigant a second day is a luxury that cannot be afforded.' " *Id.*; *see also id.* at 1178 (where plaintiffs "had a fair opportunity to present the contention [. . .but] did not avail themselves of the [] appeal . . . they are not entitled to a second judgment.").

Here, as in *NTEU*, this case involves exactly the same forms and exactly the same kind of high-level demographic information as *CIR I*. Also, as in *NTEU*, both cases were brought in this

2019) (collateral estoppel applied where records not identical).

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

district and the same procedural means of adjudication. Also, as in *NTUE*, the legal climate has not changed in DOL's favor in the handful of years since *CIR I*. DOL's declarant admits the tides are changing in favor of Plaintiffs' position. Moskowitz Decl. ¶ 11 ("increased the number of corporations releasing EEO-1 data prospectively.") Also, as in *NTEU*, DOL should have known, and *did* know, that plaintiffs were seeking EEO-1 Reports for additional years and contractors in 2019, when *CIR I* was decided. *See* Baranetsky Decl. ¶ 10. There is no reason why it could not have raised any issue it had with *CIR I* in Ninth Circuit, rather than trying to relitigate the same issues here. Further, as in *NTEU*, no other policy reason justifies giving DOL a second bite of the apple. Any disparity between the number of EEO-1 reports sought is immaterial.[3] Failing to apply *CIR I* would invite agencies to indefinitely relitigate the public's right of access to EEO-1 Reports and similar submissions, contrary to *NTEU* and FOIA's purpose.

Last, DOL's statement that collateral estoppel "has never been applied offensively against the federal government to compel the release of documents not previously disclosed" makes no difference. There is no question that collateral estoppel can be applied by either party "in FOIA actions to prohibit relitigation of issues previously determined in earlier FOIA actions between the same parties," *Osen LLC*, 2019 WL 4805805, at *5, DOL cites no authority for departing from this rule. *See also* Dkt. No. 42 at 3 n.2 (citing *Stonehill v. I.R.S.*, 534 F. Supp. 2d 1, 8 (D.D.C. 2008)).

**B.    DOL DOES NOT MEET ITS BURDEN TO SHOW EXEMPTION 4 APPLIES**

DOL has not met its burden to show EEO-1 Reports are properly withheld pursuant to Exemption 4 under the law and facts. DOL's Reply fails to show *how* the records are commercial

---

[3] The district court cases cited by DOL are distinguishable, because the documents at issue were different enough that a ruling in one might not resolve the other. Dkt. No. 42 at 2:25-3:3. For example, in *Lardner v. U.S. Dep't of Justice*, 638 F. Supp. 2d 14 (D.D.C. 2009), the court held that an earlier case holding that names of 25 prominent clemency applicants could not be withheld under Exemption 6 (which provides qualified, case-by-case protection) did not require the Court to reach the same conclusion about a request for "the identities of all clemency applicants whose applications were denied during former President Bush's term in office." There is no such distinction to be made here.

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

enough that withholding is justified. Instead, it continues to try to smuggle in a definition of "commercial" that would render the term meaningless by making *any* government records submitted by a company qualify for withholding, contrary to rules of statutory interpretation and well-established Exemption 4 case law. DOL's Reply also still fails to show that contractors "customarily" or "actually" treat EEO-1 reports as confidential and has not established an assurance of privacy was provided, even under *Argus Leader*, 139 S. Ct. at 2366.

### 1.    EEO-1 Reports Are Not Commercial

DOL fails to provide the requisite specificity to show EEO-1 Reports are commercial. First, DOL asserts an admittedly sweeping legal test for what is "commercial" by claiming it simply depends on whether records "relate[] to" *the business*. Dkt. 42 at 7 (focusing on "business," not commerce and admitting this definition has "broad scope and expansive sweep"). However, such a broad interpretation would render the commercial prong obsolete because hypothetically *any* documents a company would submit to the government would ostensibly be "related to" the company – thus there would be no need for the test. This result is prohibited under basic principles of statutory interpretation. *Cf. Williams v. Taylor*, 529 U.S. 362, 364 (2000) ("the cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute"). Indeed, this is likely *why* courts have fashioned a more conscribed legal test for commerciality, in order to avoid this restriction of statutory interpretation. *See infra*.

DOL's proposed rule also runs afoul of well-established caselaw. Multiple cases in several Circuits have required a more narrow reading than DOL's stretched "related to" test. The narrower test, upheld by this Circuit (and others) in *Watkins v. U.S. Bureau of Cust. & Border Protec.*, 643 F.3d 1189 (9th Cir. 2011), *Carlson v. U.S. Postal Service*, 504 F.3d 1123 (9th Cir. 2007), and *Van Bourg, Allen, Weinberg & Roger v. N.L.R.B.*, 728 F.2d 1270 (9th Cir. 1984), requires that records disclose "intimate aspects of a business" or be "intrinsically related to" commerce or "plainly commercial" to qualify, so not every bit of information submitted to the government is exempt as commercial. *See* Dkt. 42 at 16 (DOL admits this is part of the test). Indeed, *Watkins* clearly stands for this principle. There, the court explained that "intimate aspects of an importers[']s business such as supply chains" are "plainly commercial" in order to find the

4

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

records qualified as commercial. 643 F.3d at 1194; *see also Carlson*, 504 F.3d at 1129. In general, this Circuit finds records commercial if they are related to a company's *products* or *finances*, which DOL cannot earnestly claim here. *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1050 (3d Cir. 1995) (requiring a "logical connection" between records and exemptions).

DOL tries to swat *Watkins* away by stating that it was not line-drawing when it stated "intimate aspects" are "plainly commercial," Dkt. 42 at 15. But what else did the Court mean by pointing out that the records were "*plainly* commercial" if not creating a line drawing test? DOL also tries to diminish the significance of *Carlson* by name-calling its holding as "unremarkable" but remarkable or not, this is the law of this Circuit.[4]  Both cases require not just any degree of abstract "relatedness" but something more that EEO-1 Reports simply are not. Bendick Decl. ¶¶ 10-13 (discussed more *infra*). Other courts also agree with this reading. *New York Times Co.*, 2021 WL 371784, at *8 (commercial is "records that…relate to the income-producing aspects of a business.").

DOL creatively asserts that *Public Citizen Health Research Group v. F.D.A.* ("*Public Citizen*"), 704 F.2d 1280 (D.C. Cir. 1983), somehow expands the rule of *Watkins*, but that argument also fails for two reasons. First, *Public Citizen* is not the law of this Circuit. Regardless, even that case and other D.C. Circuit cases do not support as limitless a test, as DOL suggests. The court need only look at the kinds of records at issue in the D.C. cases. For instance, in *Public Citizen* the D.C. Circuit found that "profit-oriented research" could be commercial. *See* 704 F.2d at 1290. But *Watkins* would also find such records "commercial." Indeed, all of the types of records in the D.C. cases are vastly different and inherently commercial compared to the highly abstracted employee demographic data in the EEO-1 Reports. In *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 320 (D.C. Cir. 2006) (which DOL cites) the D.C. Circuit found letters to be commercial because they "describe favorable market conditions for [companies]" unlike EEO-1 Reports that nowhere mention or impact the market or bottom line.

---

[4] Even DOL admits this is the test when it tries to claim, "EEO-1 reports contain headcount data that is *intrinsically* commercial." Dkt. No. 42 at 16. But DOL cannot have it both ways. It tries to employ this test but still attempts hold the position that EEO-1 Reports are merely related to commercial aspects of the business.

*See also Critical Mass Energy Project v. Nuclear Regulatory Comm'n* , 830 F.2d 278, 281 (D.C. Cir. 1987) (report on the operations of nuclear plants commercial because 'commercial fortunes' could be materially affected by disclosure); *Pub. Citizen* , 975 F. Supp. 2d at 101 ("'Commercial' is…defined to mean 'engaged in commerce' or…bearing on commerce.'"). All of these D.C. Circuit cases have, just like the Ninth Circuit, required *something more* than a record be broadly "related to" to a company – they must be used commercially or involve income-producing aspects of a business. As the district court stated in *Besson v. U.S. Dep't of Commerce*, the company must have a commercial "stake" in the material. 480 F. Supp. 3d 105, 113 (D.D.C. 2020).

In addition, the half a century old *Excelsior* test (beginning with Getman in 1971) demands that EEO-1 Reports records containing employee data, in general, *cannot* be commercial. DOL's Reply has difficulty distinguishing this line of cases, and therefore buries its analysis and tries to distinguish the cases by stating they did not disclose the *number* of employees. Dkt. 42 at 19. However, that is not true. *Getman* permitted disclosure of a list of *all* employees' eligible to vote – which *de facto* discloses a specific numerosity. DOL also cites *American Airlines v. Nat'l Mediation Board*, *Id.* at 20, but that case supports Plaintiffs' position. The *American Airlines* court did not hold the records were commercial because they contained numbers, instead it found the records were commercial only because of two reasons that do not apply here: (1) union records are especially commercial and (2) the information was expressly confidential according to a regulation. 588 F.2d at 866, 870. Here, the records only disclose the total number of employees and a high-level breakdown of diversity. *See* Dkt. 42 at 19 (admitting "a person's identity, without more has no commercial significance"). Additionally, *American Airlines* reaffirmed that the "commercial" test was limited. *See American Airlines, Inc.*, 588 F.2d at 868 (citing cases upholding a narrow definition like *Washington Research Project, Inc. v. HEW*, 504 F.2d 238, 244-45 (1974) (research projects funded by company were not commercial); *Brockway v. Dep't of Air Force*, 518 F.2d 1184, 1188 (8th Cir. 1975) (witness's statements about airplane crash are not commercial).

Regardless, DOL's declarations fail to establish that EEO-1 Reports are commercial – because they are not. Unlike in *Watkins*, they are not intrinsically related to the products or

finances or commercially used. Indeed, the proffered declarations do not sufficiently state how these records reflect business strategies or commercial data. For instance, the Declaration of Ms. Roberson mentions multiple articles that supposedly suggest the commerciality of EEO-1 Reports, but these articles nowhere claim that EEO-1 Reports are "commercial," just that diversity data in general is good for creativity. Roberson Decl. ¶ 6 n.8 (citing article which nowhere states records are commercial); *see also id*. at ¶ 3 (citing Federal Reserve article which is similar). The declarations from the bellwether objectors also do not show or explain in *what* way or *how* the records are *used* for a commercial function with *any* specificity. *See* Jasinowski Decl. ¶ 16 (vaguely stating that EEO-1 Reports "provide insights" into Brandenburg recruitment and retention but no discussion of commercial use or how they provide insights).

Instead, declarants admit the records are non-commercial. Sobieksi Decl ¶ 9 (stating EEO-1 Reports "disclose workforce totals across ten job categories" and that "the *purpose* [of EEO-1 Reports] *is to disclose diversity information*" *not* for commercial use). *Cf. American Airlines, Inc.*, 588 F.2d at 870 (where records "served no commercial function" they are not commercial). They also repeatedly wave around insufficiently conclusory and broad statements. Barcon Decl. ¶ 10 (simply stating "a diverse workforce is beneficial to DHL's commercial success" but not explaining how *used for commercial purposes*); McKay Decl. ¶ 10 (baselessly claiming "the 10 occupational categories provide meaningful insights into a company's headcounts"). There is not a single statement in DOL's declarations where a declarant expressly states that an EEO-1 Report is used for any specific commercial purpose other than recruiting. *Cf. Besson v. U.S. Department of Commerce*, 480 F. Supp. 3d 105, 113 (D.D.C. 2020) (stating poaching is insufficiently commercial). Such sweeping and conclusory statements do not meet DOL's burden.

These declarations are similar to those provided in *Besson v. U.S. Department of Commerce*, 480 F. Supp. 3d 105, 113 (D.D.C. 2020), where the names of employees were disclosed. Names of employees often can reveal gender, race, and ethnicity, but as the Court found in *Besson*, "it is not clear what commercial consequences *Ligado* risks from disclosure of its employees' names." As in *Besson*, DOL "says that disclosure would reveal information about this particular team, but it does not adequately explain how this information, if revealed, would

'provide third parties with insight into [contractors'] business strategy' or its technical capabilities." *Id.* Similarly, as *Besson* made clear DOL's concern "over 'poaching' employees [is not] sufficient to establish its commercial nature" *id.*, DOL "has not, for example, shown that . . . . disclosure would create insight into [contractor's] business strategy or capabilities." DOL thus has failed to establish that [employee data] qualifies as 'commercial' information. *Id*. at 113.

DOL's inability to demonstrate that these records are commercial stems from the fact that this task is Sisyphean. It is impossible to prove EEO-1, Type 2 reports are commercial, where the standardized government forms are single page grids containing generic categories of jobs, genders, and race to prove compliance with federal anti-discrimination laws. *Cf. Argus Leader,* 139 S. Ct. at 2361 (withholding "actual sales data"). The subject headings that are allegedly categories of strategy, are simply columns that have demographic subject headings like "Male" or "Female," as well as "White," "Asian," and "Black or African American." The headings that DOL alleges reveal "recruiting" strategies are generic job titles, such as "Executive/Sr. Officials & Mgrs," "Sales Workers," "Laborers & Helpers" created by DOL, rather than any specific company. *Id.*; *see also* CWC Decl. ¶ 23 (generically stating that employers use data to generate "representational benchmarks to assist recruiting"). Nowhere do the declarations expressly state how EEO-1 Report categories or data are used, likely because nothing about any of these generic categories alone or in combination reveals a tailored commercial strategy or business structure at the thousands of individual companies which are each unique and distinctly diverse, as DOL admits. CWC Decl. ¶ 9 (stating the EEO-1 dataset identifies "over eight hundred (800) unique NAICs designations). Given DOL's concession about the contractor differences, these titles no doubt have *vastly* different meanings and concepts from company to company, and reveal nothing about the company specific structure. Instead, these government-invented generic job titles only help reveal the diversity of a company's workforce, as intended. Sobieksi Decl ¶ 9.

Instead DOL's only real claim in its Reply is that the records are commercial because they reveal the total number of employees at a company, and headcount data alone is "intrinsically commercial." Dkt. 42 at 16. DOL relies on Dr. Bendick's declaration for this statement, but Dr. Bendick made no such statement. While Dr. Bendick stated that workforce data is "related to" the

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

firms' general commercial data (as could also be said of every fact about a company or its workforce), Dr. Bendick made clear that "none of [the EEO-1 Report's] six items [of data] constitutes managerial, financial information or trade secrets." Bendick Decl. ¶ 10. Instead, Dr. Bendick wrote, "[e]conomists, other business, analysts, and business managers *do not generally consider such broad descriptive workforce data to be **commercially-valuable**[,]*" *id.* ¶ 11, and that "[e]mployers filing EEO-1 reports typically regard those reports as nothing more than a necessary cost of doing business…completed solely because they are legally required . . . . In short, the standard practice . . . is, 'File 'em and forget 'em.'" *Id.* ¶ 12. This is why a substantial and growing number of U.S. employers now voluntarily release their EEO-1 Reports, as Dr. Bendick explains, *id.* ¶ 13, n. 20,[5] and as DOL's concedes, Moskowitz Decl. ¶ 11.

Similarly, DOL tries to suggest, *see* Dkt. 42 at 17, that Dr. Bendick somehow conceded that EEO-1 Reports are used for commercial purposes. *See* Dkt. 34 at 15 (DOL conceding that a commercial use or function must be shown to prove commerciality). But once again this is a clever equivocation by DOL. While Dr. Bendick did concede in his declaration that DOL's declarant "is correct that many firms use *diversity data* [in general] in designing and managing [their business]" he clarified that "she is incorrect that the diversity data they put to such uses are those in EEO-1 reports." Bendick Decl. ¶ 33. He explained that "EEO-1 data -- particularly Type 2 Consolidated Reports -- are almost always too broad and inappropriately structured to relate to

---

[5] In fact, as discussed *infra*, *all* public companies are required to release their total number of employees in SEC filings, and so it is possible that the majority of the 4,796 withholding federal contractors are publicly-traded and already release this information. This is likely given that most federal contractors are publicly-traded. *See* Mark Fahey and Nick Wells, *Here are the 52 public companies that make the most money from the federal government*, Jan. 4, 2017 https://shorturl.at/fzGT0. So while DOL suggests that the Bellwether companies are somehow representative, it is possible this may not be the case. To confirm, DOL was supposed to disclose the list of all objectors, which DOL represented it would do, but it did not, so there is no way for Plaintiffs confirm how many objectors are similar or publicly traded. *See* DOL, Submitter Notice and Response Portal Frequently Asked Questions) https://shorturl.at/cOSY3 (stating "Under FOIA and relevant interpretive case law, the identities of objecting contractors are not exempt under FOIA Exemption 4. Accordingly, once the processing of the objector list has been completed…OFCCP will provide CIR with the requested list of objecting contractors"). Regardless, if this Court is convinced that the total number of employees is commercial, that single value could be redacted and all other datapoints released to comply with FOIA.

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

the specific internal operations that a firm would need to plan, estimate, or reward." *Id.* DOL's declarations bear this out. The McKay Declaration which DOL heavily relies on only mentions that "human resources data" more broadly is commercially used. McKay Supp. Decl. ¶ 5. The Roberson Declaration which is the central prop of DOL's Reply repeatedly only claims that human resources data in general is commercial and the *only time* it states EEO-1 Reports are used for commercial purpose, it relies on a single article that does not prove this point. Instead, the article states "[t]he EEO-1 isn't perfect," but just "the best yardstick for workforce diversity available." *See* Roberson Supp. Decl. ¶ 9 (citing the article As You Sow and Whistle Stop Capital, which "call[s] upon all companies to release their EEO-1 forms" and states that the article needed to rely on additional "research firm DiversIQ" because EEO-1 reports are too broad.) Regardless, even a finding that general diversity data revealed a correlation to some financial benefit, is *not* the same as EEO-1 Reports revealing intrinsically commercial data.

Last, DOL ignores case law that directly supports Plaintiffs' argument. Most clearly, DOL does not wrestle with the reality that *CIR I* already analyzed these EEO-1 reports and found that they were not commercial. Instead DOL, prevaricates and says that EEO-1 Reports were not created to evaluate discrimination. Dkt. 42 at 19. But these are not Plaintiffs words, these are the agency's. Mr. Hodge clearly stated EEO-1s are used to help OFCCP target potential violations. Hodge Decl. ¶ 26. As multiple cases have held: where records are not used for commercial purposes they are not commercial. *See also News Grp. Boston, Inc. v. Nat'l R.R. Passenger Corp.*, 799 F. Supp. 1264, 1269 (D. Mass. 1992) (salary information is not commercial); *Pub. Citizen Health Research Grp. v. U.S. Dep't of Health, Ed. & Welfare*, 477 F. Supp. 595, 605 (D.D.C. 1979) (health-related studies are not commercial). DOL tries to avoid this by arguing that even though EEO-1 reports serve a government purpose that would not mean they are not commercial, by relying on *Argus Leader*. Dkt. 42 at 19. DOL argues, *Argus Leaders'* records were "useful to [the government's] administration to the [food stamp program]" *and* commercial. *Id.* However, *Argus Leader* did not analyze commerciality, and regardless that case clearly supports Plaintiffs' position because it involved food stamp data which is innately commercial, as food stamps are fungible and exchanged in commerce for goods like food, unlike EEO-1 Reports.

10

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

2.     **EEO-1 Reports Are Not Confidential**

DOL also fails to show that EEO-1 Reports are confidential under *Argus Leader*, as it is unable to show that the records are customarily *or* actually treated as confidential.  *See* 139 S. Ct. at 2366 (requiring government to show "*both* customarily and actually") (emphasis added). DOL glosses over the fact that (1) DOL has repeatedly disclosed EEO-1 data, Dkt. 42 at 20, (2) two of its four Bellwether objectors disclose the total number of U.S. employees and others have disclosed other EEO-1 data, *Id.*, and (3) the industry practice is to disclose EEO-1 data.

EEO-1 Reports are not "customarily" treated confidential by the objectors, the government, or other companies. While DOL would like to delimit the "customarily" inquiry to what the objecting companies attest to be their own custom, Dkt. 42 at 23, that narrow interpretation is not aligned with the common meaning of the word "custom" nor is it the actual test. *Argus Leader*, subsequent cases, and the DOJ's guidance directs courts to also consider the circumstances, like government disclosures and industry standards.

First, under FOIA, the government's actions are strongly probative of what is "customarily" confidential. The FOIA statute and agency guidelines underscore that the *government* ultimately wields the power to withhold information and bears the burden to show that the requested documents are customarily withheld. *See generally Mokhiber v. U.S. Dep't of Treasury*, 335 F. Supp. 2d 65, 69 (D.D.C. 2004) (citing *Army Times Pub. Co. v. U.S. Dep't of Air Force*, 998 F.2d 1067, 1068 (D.C. Cir. 1993)); Exec. Order No. 12,600, 3 C.F.R. § 1987 (requiring the agency to make an independent determination about whether the information can be withheld under Exemption 4, which can override a company's objection); 29 C.F.R. § 70.2(g)(5) (DOL guidelines stating the same). For years, DOL has disclosed EEO-1 Reports – in response to requests, not just litigation. OFCCP disclosed to the *Mercury News* and *CNN* without litigation. After litigation with CIR, DOL disclosed in *CIR I*. Similarly, in response to the present action, OFCCP released *thousands* of EEO-1 Reports and published them on their website. DOL tries to diminish the importance of these releases, but these repeated actions strongly lean in favor of the court finding EEO-1 Reports are not customarily treated as secret.

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

Second, and most importantly, many of the objecting companies' custom is to disclose some kind of data within the EEO-1 Reports, which is fatal to finding the records are "customarily" treated as confidential, according to *Argus Leader*. *See* 139 S. Ct. at 2363 (stating that "retailers customarily do not disclose [] data or make it publicly available '**in** *any* **way**'") (emphasis added). DOL tries to state in countless ways that much data still remains secret, but by DOL's own admission, some of the objectors have made *some* disclosures, including the total number of U.S. employees, in public filings submitted to the world. Indeed, just the datapoint of total employee numbers can be obtained from a public company through various sources like: (1) a company's annual 10-K report, required by the SEC; (2) a company's website; (3) financial news websites, like Bloomberg or CNBC; (4) business research services, such as Bloomberg Terminal; and (5) public relations officers of the company. *See generally* Bendick Decl. ¶¶ 13 n.20, 27 So rather than not disclosing *any* material in *any way*, *cf. Argus Leader*, 139 S. Ct. at 2363, *identical* data has been posted.

Courts have suggested that looking to industry standards as a whole is also useful to determine what qualifies as "customarily" confidential. DOL tries to sweep away these cases by saying that *ASBL* "observed in dicta" that observing other company practices may be "relevant to the question of confidentiality." Dkt. 42 at 23. But *ASBL* is not a singular case. In *Argus Leader*, examining retail stores participating in SNAP *as a whole*, the Court indicated that an industry-wide inquiry is appropriate. *Id.* Indeed, despite its position in this case (that *Argus Leader* did not suggest this) the Department of Justice has indeed, in its own guidance interpreting *Argus Leader*, stated that industry standards are probative evidence of confidentiality. *See* Dep't of Justice, *Exemption 4 After the Supreme Court's Ruling in* Food Marketing Institute v. Argus Leader Media, https://shorturl.at/ckuBZ ("And as *Argus Leader* itself demonstrates, industry representatives can provide the *necessary* information regarding the customary treatment of such information. That option is particularly appropriate in contexts in which *a large number of submitters would make it difficult to collect information from each submitter directly*.") (emphasis added) (Declaration of D. Victoria Baranetsky ("Baranetsky Decl."), Ex. A); *see also* Dep't of Justice, *Step-by-Step Guide for Determining if Commercial or Financial Information Obtained*

*from a Person is Confidential Under Exemption 4 of the FOIA*, https://shorturl.at/cqyBH (stating that whether "the submitter customarily keep[s] the information private . . . . may in appropriate contexts be determined from industry practices.") (Baranetsky Decl., Ex. B).

It is undisputed that posting EEO-1 Reports is a growing industry standard. DOL squarely admits that companies have "increased the number of corporations releasing EEO-1 data prospectively." Moskowitz Decl. ¶ 11. While DOL tries to argue that federal contractors do not reflect a "single industry," CWC Decl. ¶ 19 and also claims that some companies felt "pressured" to post them after George Floyd's murder in 2020, Moskowitz Decl. ¶ 10, even DOL cites a recent article by *Bloomberg Law* that plainly admits "most of the largest US companies are sharing data on the race and gender makeup of their workforce" leading to a "historic new era of transparency." *See* Moskowitz Decl. ¶ 10 (citing One Diversity Initiative Companies Aren't Backtracking On, Bloomberg Law News, Sept. 25, 2023). CIR's declarant Dr. Bendick also shows that posting EEO-1 Reports is an industry custom, which DOL does not rebut. Bendick Decl. ¶13 n. 20 (stating observers find public release of EEO-1 reports is the "'new normal'".) DOL's only rebuttal is that to "permit evidence of competitors conduct" "would put veto power into the hands of those who might be most eager to learn a company's secrets." Dkt. 42 at 23. But Plaintiffs do not ask for veto power, they merely ask this Court to apply the test set forth in *Argus Leader*, in agency guidelines, and in other cases which would find DOL's disclosures, industry standards and objectors' own customs, do not show EEO-1 Reports are customarily confidential.

Similarly, EEO-1 Reports are not *actually* confidential. Three of the five bellwether contractors post some of the EEO-1 data on their company websites and public filings. DOL tries to diminish the significance of these disclosures by detailing "178 cells," are still remaining. Dkt. 42 at 21. While it is true that not *every data cell* has been made public, even partial disclosure and the fact that many data points are *observable* is fatal to DOL's case. *Argus Leader* is clear that records are secret where retailers strictly "d[id] not...make it publicly available 'in any way'" and "[e]ven within a company . . . only small groups of employees usually ha[d] access to it." 139 S. Ct. at 2363. Similarly, courts have repeatedly held in other FOIA cases that when *some* information contained in requested records is made public, the information should not be

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

withheld under FOIA. *See Inner City Press/Comm'y on the Move v. Bd. of Governors of Fed. Reserve Sys.*, 463 F.3d 239, 248 (2d Cir. 2006); *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1154 (D.C. Cir. 1987) ("To the extent that any data requested under FOIA are in the public domain, the submitter is unable to make any claim to confidentiality"); *Watkins*, 643 F.3d at 1196 (same*.*). Applying *Argus Leader*, it is clear that DOL should disclose the withheld records given that most of the companies make available a variety of the same data points on their public websites. Unlike data stamped confidential, or accessible to only a small subset, the information is submitted to the government, and can be observed in real time by many at the company.

### 3.    EEO-1 Reports Are Not Provided With an Assurance of Privacy

Last, there DOL asserts that "there was an assurance of privacy" here because it promised to protect records "to the maximum extent of the law," Dkt. 42 at 25, but whether an assurance of privacy is provided is determined by an objective test, one that DOL has not met. For instance, any putative promise made by OFCCP that it protects the information is contradicted by OFCCP's clear and express statements that disclosure of EEO-1 Reports is possible. *See, e.g.*, OFCCP, *FOIA Frequently Asked Questions* (stating here and on the federal register that EEO-1s may be disclosed). Additionally, DOL's actions have undercut this promise as it has released such data. *See id. https://shorturl.at/xIPV4* (stating "The EEO-1 data of contractors that have not objected will be released to CIR and published on our website in the FOIA library.") "Courts find that when there is behavior by the agency showing disclosure is possible, records cannot be confidential." *Am. Soc'y for Prevention of Cruelty*, 19 Civ. 3112 (NRB), at *5. Here, where the agency's own words *and* actions undercut any purported promise, no assurance of confidentiality —implied or express—exists.

### C.    DISCLOSURE OF EEO-1 REPORTS IS NOT PROHIBITED BY THE TRADE SECRETS ACT AND WOULD CAUSE NO FORESEEABLE HARM

### 1.    Disclosure Is Not Prohibited by the Trade Secrets Act

DOL claims that disclosure of EEO-1 Reports is prohibited by the Trade Secrets Act ("TSA"), 18 U.S.C. § 1905, contending that the TSA allows DOL to bypass a showing of foreseeable harm under FOIA's "foreseeable harm" test ("FHT"), 5 U.S.C. § 552 (a)(8)(A) when

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

it comes to EEO-1 Reports. *See* Dkt. No. 42 at 19-20. The DOL also states that "the TSA is much broader in scope, and encompasses far more information, than the traditional notion of 'trade secrets' contained in Exemption 4" and indicates that because "the TSA specifically encompasses 'confidential statistical data,'" that it prohibits disclosure of EEO-1 Reports. *See id.* at 19:15-17, 19:21-22. DOL's position on these matters is erroneous.

First, to the extent that the DOL states that EEO-1 Reports contain trade secrets, it has essentially waived that argument by omitting it in *CIR I. Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992). It should not be permitted to litigate the same issue in piecemeal fashion, stringing along the Court and other litigants for years on topics that could have, and should have, been raised. *See ibid.*

Second, as explained in Plaintiff's papers, EEO-1 data does not meet the TSA's stringent definition of "trade secret" or Exemption 4. *See* 18 U.S.C. § 1905. The TSA prohibits disclosing:

> to any extent not authorized by law . . . information [which] concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association . . . .

*Id.*; *see Pac. Architects & Engineers Inc. v. U.S. DOS*, 906 F.2d 1345, 1347, n.2 (9th Cir. 1990).

Here, the records are not trade secret. "The subject of a trade secret must be secret, and must not be of public knowledge or of a general knowledge in the trade or business." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 (1974); *see also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("Information that is public knowledge or that is generally known in an industry cannot be a trade secret."). Here, EEO-1 Reports are not in any manner trade secrets with the type of "confidential statistical data" contemplated by the TSA. Indeed, they are not secret, they are disclosed to the DOL and the DOL has disclosed such information in the past, they are publishable pursuant to court orders under FOIA, and contractors regularly disclose such information of their own accord and even make it available online. *See* Bendick Decl. ¶¶ 27-28, 31, 34; Williams Decl. ¶ 16.

Third, the "Trade Secrets Act has *no independent force* in cases where [FOIA] is involved" and "cannot override the FOIA's obligatory disclosure provisions." *JCI Metal Prod. v.*

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

1   *U.S. Dep't of the Navy*, No. 09-CV-2139-IEG, 2010 WL 2925436, at *8 (S.D. Cal. July 23, 2010)

2   (citations omitted). "[I]f the information is not protected by Exemption 4, it is not protected by

3   the [TSA]." *Id.* (citations omitted). Here, because Exemption 4 does not apply (as explained in

4   Plaintiffs' papers), the TSA has no applicability. *See Gen. Elec. Co. v. NRC*, 750 F.2d 1394, 1402

5   (7th Cir. 1984) (contrasting Exemption 4 as "broadly worded" with the TSA as "almost certainly

6   designed to protect that narrower category of trade secrets . . . *whose disclosure could be*

7   *devastating to the owners and not just harmful*," and elaborating that "if the [record] is not

8   protected by [E]xemption 4, even more clearly is it not protected by [TSA]" (emphasis added)).

9        Fourth, DOL has not met its burden of showing that EEO-1 Reports fall under the TSA

10  because it fails to demonstrate that EEO-1 Reports are trade secrets, "commercial," or

11  "confidential." *See* Dkt. No. 42 at 19-20; *see A.C.L.U. v. U.S. D.O.J.*, 880 F.3d 473, 483 (9th Cir.

12  2018) (government bears burden of FOIA withholdings). DOL provides no applicable case law or

13  other binding legal authority for its position and thus fails to meet its substantial burden. *Id*.

14  Moreover, this Court has already indicated just the opposite of what the DOL argues – *i.e.*, that

15  EEO-1 Reports are not exempt under FOIA.  *CIR I*, 424 F.Supp.3d at 779.

16                **2.        Disclosure Would Cause No Foreseeable Harm**

17        DOL also contends that disclosure of the EEO-1 Reports would cause foreseeable harm.

18  *See* Dkt. No. 42 at 20-21. This is erroneous, and DOL's assertions of "harm" in this context range

19  from the implausible and unreasonable to the, frankly, farcical.

20        FOIA's "foreseeable harm" test (FHT), 5 U.S.C. § 552 (a)(8)(A) —which permits

21  withholding only of a reasonably foreseeable harm of the "protected by an exemption"—is an

22  objective test and, in the present matter, requires a showing of specific harm to particularized

23  commercial or financial interests, with the burden on the agency to meet this high standard. *See*

24  *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F.Supp.3d 93, 98 (D.D.C. 2019); *Machado*

25  *Amadis v. Dep't of Justice*, 388 F.Supp.3d 1, 20 (D.D.C. 2019). As the Court previously found in

26  *CIR I* (which collaterally estops this claim in the first place) DOL fails to demonstrate in any

27  particularized manner, a foreseeable commercial or confidential harm that is objectively at risk.

28  *See CIR I*, 424 F.Supp.3d at 780; *see also* Bendick Decl. ¶¶ 7-36; Williams Decl. ¶¶ 11-16.

DOL's reliance on *Greenspan* is inapposite, as that case involved sensitive materials and analysis from the Federal Reserve of a highly confidential and internal-use-only purpose on matters affecting the U.S. economy. *See Greenspan v. Bd. of Governors of Fed. Rsrv. Sys.*, 643 F. Supp. 3d 176, 199-203 (D.D.C. 2022). The harms in *Greenspan* were specific, focused, and concrete, with the Court honing in on the fact that the materials involved communications and analysis that could foreseeably affect the entire economy. *See id.* By stark contrast, the information at issue here is abstract EEO-1 data that contains no internal deliberations, communications or analysis and that is already largely available to the public from many companies with no objectively apparent resulting harms. The notion that disclosure would cause concrete and specific commercial or confidential harm is unreasonable and unforeseeable, and DOL has failed to demonstrate otherwise with specificity. *See id.*; *see also* Bendick Decl. ¶¶ 7-36; Williams Decl. ¶¶ 11-16; Dkt. No. 39 at 19:15-22:19.) DOL's reference to *WP Co.* is similarly inapposite, as that matter involved concrete harms to the interests of both PPP borrowers and lenders which could, *inter alia*, adversely affect creditworthiness and fiscal survival. *See WP Co. LLC v. U.S. Small Bus. Admin.*, 575 F.Supp.3d 114, 119-20 (D.D.C. 2021).

### D.   DOL's "AGENCY RECORDS" JUSTIFICATION FOR WITHHOLDING 621 PLAINLY RESPONSIVE EEO-1 REPORTS FAILS

DOL no longer appears to contest, Dkt. No. 42 at 23-24, its initial "nonresponsiveness" justification for withholding 621 EEO-1 reports. Dkt. No. 34-8 at 15. Now DOL asserts a new justification: that the 621 reports are not DOL's "agency records" because the companies that submitted them were, it claims, not technically required to do so. Dkt. No. 42 at 21-22.

DOL's new justification fares no better. The definition of "agency record" under FOIA, which DOL declines to even mention, is well-established and depends on whether the agency (1) "either create[d] or obtain[ed]" them and (2) is "in control of" them at the time of the FOIA request. *U.S. D.O.J. v. Tax Analysis*, 492 U.S. 136, 144-46 (1989). Whether an agency has "obtain[ed]" a record turns on whether the agency has, in fact, received it. *See id.* at 144, *see also id.* at 144-45. The word "control" also has a special meaning, *i.e.* that "the materials have come into the agency's possession in the legitimate conduct of its official duties." *Id.* at 145. That is all.

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

1    Applying this definition, the 621 EEO-1 reports at issue here are plainly "agency records"

2  that must be disclosed under FOIA. DOL admits in a supporting declaration that some submitters

3  erroneously checked "federal contractor" boxes on their submission forms, Dkt. No. 43, ¶¶ 8-11,

4  and that the reports were forwarded to and digitally stored by DOL's OFCCP on its computer

5  systems, in its "Equal Employment Data System" database which it notes is accessible from

6  OFCCP staff members computer desktops. Dkt. No. 43 ¶¶ 3-11. Given these admissions, there is

7  no question that, contrary to DOL, OFCCP "obtain[ed]" these reports and "control[led]" them.[6]

8    DOL also contends that disclosing these records is prohibited by 42 U.S.C. section 2000e-

9  8(e). However, that section's plain language and *Sears Roebuck & Co.*, 509 F.2d at 529 only say

10  require confidentiality from an "officer or employee of the [EEOC,]" not OFCCP. *Id.* at 529.

11    **E.    DECLARATORY RELIEF IS NEEDED TO ADDRESS DOL'S PROCESSING DELAYS**

12    The Court should find and declare that DOL's incredibly slow, and *to this day*

13  incomplete, processing of plaintiffs' requests violated FOIA. DOL's failure to inform plaintiffs,

14  for years, of the extent to which responsive records were exempt or would be disclosed means

15  that DOL could not possibly have provided, and did not provide, a lawful determination by the

16  deadline, nor did they disclose records promptly. *See* Dkt. No. 39 at 24:13-19; *Children's Earth*

17  *Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1089 (N.D. Cal. 2015); 5 U.S.C. §

18  552(a)(6)(A)(i), (B)(i) (20 working day determination deadline); 5 U.S.C. § 552(a)(6)(C)(i)

19  (records must be made "promptly available"). There was no need for DOL's extreme delays

20  here. Moreover, DOL's reliance on regulations demonstrates that its delays were based on a

21  "practice" that requires declaratory relief. CIR requested this material first in 2018. Baranetsky

22  Decl. ¶ 10. Courts regularly grant declaratory relief for such slow processing. *See NRDC, Inc. v.*

23  *U.S. EPA*, 966 F.2d 1292, 1299-1300 (9th Cir. 1992).

24  **III.    CONCLUSION**

25    For all of these reasons, plaintiffs' cross-motion for summary judgment should be granted

26  in its entirety, and DOL's motion for summary judgment should be denied.

27

28

---

[6] *Marzen*, 632 F. Supp. 785, is distinguishable because the requester was seeking records obtained through an investigation that was not permitted to conduct. Not so here.

DATED: December 5, 2023        Respectfully submitted,


                               s/ D. Victoria Baranetsky
                               D. Victoria Baranetsky
                               THE CENTER FOR INVESTIGATIVE REPORTING
                               1400 65th St., Suite 200
                               Emeryville, CA 94608
                               vbaranetsky@revealnews.org
                               Telephone: (510) 982-2890


DATED: December 5, 2023        CANNATA, O'TOOLE & OLSON LLP


                               By:        /s/ Aaron R. Field
                                          AARON R. FIELD

                               Therese Y. Cannata
                               Aaron R. Field
                               Zachary E. Colbeth

                               Attorneys for Plaintiffs
                               THE CENTER FOR INVESTIGATIVE REPORTING and
                               WILL EVANS

CANNATA, O' TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

**ATTORNEY ATTESTATION**

I, Aaron R. Field, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from the other Signatories.

*/s/ Aaron Field*
AARON R. FIELD