UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR,<br><br>Defendant. | No. 3:22-cv-07182-WHA<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGEMENT** |

**INTRODUCTION**

In this FOIA action, both sides move for summary judgement. For the reasons stated below, both motions are **DENIED IN PART AND GRANTED IN PART**.

**STATEMENT**

Plaintiff Center for Investigative Reporting ("CIR") is a non-profit, investigative news organization that publishes *Reveal*, a news website and hosts a weekly public radio show. Plaintiff Will Evans is a staff reporter for *Reveal* and is an employee of CIR (Dkt. No. 1 ¶ ¶ 18-19). Defendant Department of Labor is a department of the executive branch which oversees the Office of Federal Contract Compliance Programs ("OFCCP").

Employers with 100 or more employees are required to submit annual reports using Standard Form 100, also known as "EEO-1 Reports," to the Equal Employment Opportunity Commission

1  ("EEOC"). Companies that contract with the federal government and have at least fifty employees
2  are required to submit EEO-1 reports to OFCCP. The EEO-1 reports contain data about the
3  gender, racial or ethnic background, and one of ten job categories of the company's employees
4  (Dkt. No. 38 at 2). The EEOC and OFCCP collect the EEO-1 data jointly. OFCCP uses the EEO-
5  1 reports to see if the contractors are complying with Executive Order 11246, which prohibits
6  employment discrimination by government contractors (Dkt. No. 1 at 4).

7       OFCCP does not proactively disclose the EEO-1 reports. An individual or an entity must
8  submit a FOIA request to gain access to the reports. Once a FOIA request has been submitted,
9  OFCCP must notify each federal contractor that their EEO-1 report has been requested and OFCCP
10 must then make a separate determination as to whether an exemption to disclosure applies. This
11 process allows the contractor to object prior to responding to the FOIA request (Dkt. No. 38 at 3).

12      Between January 2019 and June 2022, plaintiffs submitted four FOIA requests (which were
13 consolidated into a single request by June 2022) to defendant for all EEO-1 reports submitted by all
14 federal contractors from 2016 through 2020. This request covered roughly 75,000 reports from
15 24,355 federal contractors. By August 2022, OFCCP published a notice in the Federal Register
16 informing all contractors of plaintiffs' request and provided them with an opportunity to object to
17 the request. By April 2022, OFCCP had released all EEO-1 reports of all non-objecting
18 contractors (Dkt. No. 39 at 5). Contractors numbered at 4,796 objected to the disclosure (Dkt. No.
19 38 at 5).

20      In April 2023, an order directed defendant to select six representative objecting contractors
21 for a bellwether summary judgment motion (Dkt. No. 38 at 5). The following companies are
22 bellwether objectors: DHL Global Business Services ("DHL"); Network Management Resources,
23 Inc. ("NMR"); Allied Universal Security Services ("Allied Universal"); Brandenburg Industrial
24 Service Co. ("Brandenburg"); and NorthShore University HealthSystem ("NorthShore"). The sixth
25 bellwether objector is no longer proceeding in this matter. Both sides have filed motions for
26 summary judgement. This order follows full briefing and oral argument.

# ANALYSIS

1. **LEGAL STANDARD.**

   A. **The Freedom of Information Act ("FOIA") (5 U.S.C. § 552).**

FOIA's purpose is to facilitate "public access to official information 'shielded unnecessarily' from public view and establish[ing] a 'judicially enforceable right to secure such information from possibly unwilling official hands.'" *Lahr v. Nat'l Transp. Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (*quoting Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). FOIA is designed to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. at 361 (1976) (internal quotation marks omitted). FOIA "mandates a policy of broad disclosure of government documents." *Church of Scientology of California v. U.S. Dep't of Army*, 611 F.2d 738, 741 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016).

After a request is made, an agency may withhold part of or an entire document if the material falls into one of nine statutory exemptions found in 5 U.S.C. § 552(b). *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1082, 1085 (9th Cir. 1997). "These exemptions are explicitly exclusive and must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy." *Ibid.* (citations and quotations omitted). "FOIA's strong presumption in favor of disclosure places the burden on the government to show that an exemption properly applies to the records it seeks to withhold." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015).

   B. **Summary Judgment.**

To prevail on summary judgment in a FOIA case, the agency must show that, drawing all reasonable inferences in the light most favorable to the requester, there is no genuine issue of material fact with respect to the agency's compliance with FOIA. *Lahr*, 569 F.3d at 986. The agency may meet this burden by through affidavits or declarations which demonstrate that the agency's actions are FOIA-compliant by explaining in reasonable detail that it qualifies for an

3

exemption to FOIA. *Am. C. L. Union of N. Cal. v. Dep't of Just.*, No. 12-cv-04008-MEJ, 2014 WL 4954121 at *6 (N.D. Cal. Sept. 30, 2014) (Judge Maria-Elena James). Therefore, an agency's burden is not met using conclusory or generalized allegations of exemptions. *Ibid*. (*citing Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995)).

Where, as here, both sides have filed cross-motions for summary judgment, "each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quotation omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Ibid.*

### 2.    COLLATERAL ESTOPPEL

Defendant argues that disclosure of EEO-1 reports is prevented under Exemption 4 of FOIA and the Trade Secrets Act, 18 U.S.C. § 1905. Plaintiffs, however, contend that defendant's claims for Exemption 4 and the Trade Secrets Act are barred because these issues have already been litigated in *Center for Investigative Reporting v. U.S. Department of Labor*, 424 F.Supp.3d 771 (N.D. Cal. 2019) (Judge Kandis A. Westmore) ("*CIR I*").

This order finds that plaintiffs are not permitted to bring a claim of offensive collateral estoppel against the government to prevent the relitigation of these issues. *U.S. v. Mendoza*, 464 U.S. 154. 162 (1984) ("nonmutual offensive collateral estoppel simply does not apply against the government."). The Supreme Court recognized that the government is not "'in a position identical to that of a private litigant,'" in terms of the sheer number of cases the government files across the country, dwarfing even the most litigious private parties. *Id*. at 159 (citing *INS v. Hibi*, 414 U.S. 5, 8 (1973). Further, government litigation often involves issues of public importance, where the government is the only appropriate party. *Id*. at 160. As such, defendant is not barred from raising the matter in this court and plaintiffs' argument is rejected.

### 3.    EXEMPTION 4 TO FOIA.

Exemption 4 of FOIA excuses mandatory disclosure for any commercial or financial information obtained from a person or by the government that is also privileged or confidential. 5 U.S.C. § 552(b)(4). Defendant contends that the EEO-1 reports sought by

4

plaintiffs are both commercial and confidential in nature which would exempt defendant from producing them (Dkt. No. 38 at 10, 17).

### A. 'Commercial' Requirement of Exemption 4.

Defendant maintains that EEO-1 reports are commercial in nature because they contain information about headcount totals and staffing levels across job occupation categories (McKay Decl., Dkt. No. 34-1 ¶ ¶ 14, 22). Defendant also asserts that the demographic data in the report reveals the company's diversity within its workforce which is also commercial (Dkt. No. 38 at 11). Plaintiffs argue that EEO-1 reports are not commercial because the information contained therein is too attenuated from the commercial aspects of business (Dkt. No. 39 at 12).

FOIA does not define 'commercial,' but our court of appeals has defined the term using its ordinary or common meaning. *Watkins v. U.S. Bureau of Customs and Border Protection*, 643 F.3d 1189, 1194 (9th Cir. 2011). Our court of appeals has also followed the lead of the D.C. Circuit in recognizing limits to an otherwise broad understanding of 'commercial.' For instance, "not every bit of information submitted to the government by a commercial entity qualifies for protection under Exemption 4." *Pub. Citizen Health Rsch Grp, v. Food and Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983). Likewise, information regarding names, addresses, telephone numbers, and business hours is not commercial information. *Getman v. N.L.R.B.*, 450 F.2d 670, 673 (D.C. Cir. 1971); *Carlson*, 504 F.3d 1123, 1129 (9th Cir. 2007). Defendant argues that *Getman* does not apply here because this matter does not involve employee addresses or a partial list of employee names, as there are in *Getman*. However, the relevance of *Getman* is not found in a partial list of employee names but in the D.C. Circuit's acknowledgement that there are limits to the word 'commercial.' Likewise, our court of appeals has recognized that, at some point, considering certain information as commercial may render it "too broad a definition of commercial." *Carlson*, 504 F.3d at 1129.

Consequently, while there is no clearly defined limit for what is considered 'commercial' within our court of appeals, the D.C. Circuit has indicated that Exemption 4 is designed to "to shield from public release intrinsically valuable business information such as 'business sales

5

statistics, inventories, customer lists, and manufacturing processes.'" *Citizens for Resp. and Ethics in Washington v. United States Department of Justice*, 58 F.4th 1255, 1264 (D.C. Cir. 2023). However, merely suggesting that the disclosure of information will result in commercial repercussions does not satisfy the 'commercial' requirement under Exemption 4; the agency must demonstrate that the information is commercial in and of itself. *Id*., at 1268. This is because FOIA exemptions must be narrowly construed. *Milner v. Department of Navy*, 562 U.S. 562, 565 (2011).

*First*, defendant argues that the EEO-1 reports reveal commercial data because the workforce composition is a "core operational metric that is critical to their organizations' success" (Dkt. No. 38 at 10). One bellwether objector, Allied Universal, asserts that the headcount data itself is vital to its commercial profitability because it's primary "'product' is the staff it employs," and that the staffing data is a "critical component of Allied Universal's business model and key to its revenues and profitability" (Baxter Decl., Dkt. No. 34-4 ¶¶ 7,13).

Plaintiffs counter by arguing that while there is an obvious, definitional relationship between a company's workforce data and the company's commercial data, the data from the reports are broad and non-specific. In order to be commercially valuable, plaintiffs contend, the information "almost inevitably . . . needs to be identifiable for narrow, specific aspects of a firm's operations" (Bendick Decl., Dkt. No. 34-1 ¶ 18). EEO-1 reports, according to plaintiffs, reveal commercially valuable information "by proxy," but do not relate operational or financial information in a direct way (Bendick Decl., Dkt. No. 34-1 ¶ 16). This order agrees. The EEO-1 form contains broadly sweeping categories such as 'professionals' and 'senior officials' which are to be used irrespective of relevant job categories that are found within any one industry. As a result, the report cannot itself yield any commercial insight that is specific to the operations of the federal contractor.

Defendant also asserts that the EEO-1 report is commercial because one is able to read the number of employees in one category relative to another, which could potentially reveal a strategy in the distribution of a workforce. However, aside from conclusory claims that these

ten general job categories reveal the specific workforce structure of a specific company, the bellwether objectors provide no plausible factual basis to establish this argument.

One declaration, however, provided a non-conclusory basis for establishing that the EEO-1 report reveals the workforce structure of a company: Allied Universal argues that its successful business model can be ascertained by looking at the ratio of security guard positions to client support positions (Baxter Decl., Dkt. No. 34-4 ¶ 11). Allied United contends that its security guards are its main source of revenue, and that its staffing strategies would be revealed by looking at the ratio of security guards to non-security guards. However, Allied Universal also explains that the most important financial metrics are established by how many hours a security guard worked at a customer's site and the negotiated 'bill rate' (*id*. at ¶ 8). A third metric Allied Universal uses to determine their operating expenses is staffing costs. (*ibid*.). To be clear, none of these three metrics are found in the EEO-1 report. While the number of employees working at Allied Universal is no doubt relevant, it does not itself reveal the staffing strategies of the company without any of the other three aforementioned metrics. In essence, Allied United is over-stating the contents of and the potential findings one could make using the EEO-1 report and therefore fails to establish the commercial nature of the data in the report itself.

*Second*, defendant contends that the diversity data contained within EEO-1 reports is "inherently commercial," because it creates "business value . . . 'that translates into a competitive advantage for firms'" (Dkt. No. 38 at 11; Roberson Decl., Dkt. 34-2 ¶ 9). The bellwether objectors echo this sentiment in several declarations. For example, NMR Consulting uses diversity data "to allow management to determine areas of opportunity to increase diversity so it can leverage these advantages" (Sobieski Decl., Dkt. No. 34-7 ¶ 16). DHL finds that diversity data is beneficial to success because it "helps boost innovation, and leads to the attraction, recruitment, and retention of more diverse employees" (Barcon Decl., Dkt. No. 34-6 ¶ 10; *see also* Jasinowski Decl., Dkt. No. 34-5 ¶ 16). Likewise, at the hearing, counsel for defendant stated that there is "inherent" commercial significance across

7

demographics of employees simply because "companies have universally determined that there is commercial value in diversity."

Plaintiffs reject the argument that there is commercial significance in diversity data. Instead, plaintiffs assert that diversity or demographics data is not commercial for the same reason that employee names and addresses are not commercial "because it concerns employees, not 'commerce, trade, or profit'" (Dkt. No. 39 at 13) (*citing Carlson*, 504 F.3d at 1129). Plaintiffs argue that these statements from the bellwether objectors' declarations are conclusory in nature and are not specific enough to meet the government's burden (Dkt. No. 39 at 14).

This order agrees. These declarations posit a vague connection between the data and the commercial success of each company but do not demonstrate the inherently commercial nature of the diversity data. Like names or birthdays, the demographic background of employees does not speak to the commercial contributions of a company's workforce and cannot be imposed simply because the bellwether objectors deem it so. *Carlson*, 504 F.3d at 1129.

*Lastly*, defendant asserts that disclosing five years' worth of information all at once may reveal insight into the company's operations which would not be revealed by any single EEO-1 report (Jasinowski Decl., Dkt. No. 34-5 at 4). Because this order does not find that there is a commercial gain to be found in the headcount or demographic data within the EEO-1 report, so too does it not find a compounded effect by releasing five years' worth of data to plaintiffs. To be clear, it will be approximately eight years since the first FOIA request and almost four years since the most recent request. Even if an objector could plausibly establish that five years' worth of information would reveal commercial information, that data would probably be stale by the time it was disclosed.

For the aforementioned reasons, this order does not find that these EEO-1 reports are commercial in nature for the purpose of Exemption 4 of FOIA.

### B. 'Confidential' Requirement of Exemption 4.

The second requirement under Exemption 4 is that the information must be confidential. 5 U.S.C. § 552(b)(4). Defendant contends that the confidentiality requirement is met solely by

8

the owner of the information viewing it as confidential and actually keeping it confidential (Dkt. No. 38 at 14). Plaintiffs, however, argue that customs of the industry will also affect whether information is confidential and contend that some of the bellwether objectors themselves have published EEO-1 material either online or in annual reports (Dkt. No. 39 at 14-15).

The Supreme Court recently changed the test for confidentiality in *Food Marketing Institute v. Argus Leader*, 139 S.Ct. 2356 (2019) ("*Argus Leader*"). Before *Argus Leader*, our court of appeals had adopted the 'competitive harm' test which stated that commercial information cannot be deemed confidential unless it was likely to cause substantial harm to the competitive position of the person from whom the information was obtained. However, the Supreme Court rejected this test because it was inconsistent with the ordinary meaning of 'confidential' and the Court could not justify "arbitrarily *constrict[ing]* it either by adding limitations found nowhere in its terms." *Argus Leader*, 139 S.Ct. at 2366.

Because the EEO-1 reports are not commercial in nature, this order need not decide whether the information is confidential under *Argus Leader*.

Since defendant was not able to demonstrate that the EEO-1 reports were commercial in nature, defendant's motion for EEO-1 reports to be exempt under Exemption 4 is **DENIED**.

**4.    TRADE SECRETS ACT (18 U.S.C. § 1905).**

Defendant asserts that disclosure of the EEO-1 reports is prohibited under the Trade Secrets Act (Dkt. No. 38 at 20). The Trade Secrets Act prevents the government from disclosing "to any extent not authorized by law" any information concerning "trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association." 18 U.S.C. § 1905. Defendant contends that because the EEO-1 reports fall within Exemption 4, the Trade Secrets Act may prevent defendant (as a government agency) from disclosing the reports (Dkt. No. 38 at 18).

Before *Argus Leader*, our court of appeals held that Exemption 4 of FOIA and the Trade Secrets Act were coextensive. *Pac. Architects & Engineers Inc. v. U.S. Dep't of State*, 906

F.2d 1345, 1347 (9th Cir. 1990). Since *Argus Leader*, our court of appeals has not revisited the scope of Exemption 4 relative to the Trade Secrets Act. *Synopsys, Inc. v. U.S. Department of Labor*, 2022 WL 1501094 at *4, n. 3 (9th Cir. 2022) ("We need not decide here whether Exemption 4 is indeed now broader in scope than the Trade Secrets Act.")

Defendant also argues that EEO-1 reports are protected under the Trade Secrets Act because the report is "confidential statistical data" under the plain meaning of the terms found in the Act. This order is not convinced by defendant's superficial argument that diversity data within an EEO-1 report is protected under the Trade Secrets Act. Since Exemption 4 of FOIA and the Trade Secrets Act are no longer co-extensive, this order cannot and will not assume that which is considered confidential under the former statute is also considered confidential under the latter. The Supreme Court in *Argus Leader* reevaluated the test for confidentiality in the context of FOIA and did not extend the test for confidentiality outside of FOIA. Defendant's contention that 'confidential statistical data' under the Trade Secrets Act is simply governed by the plain meaning of the terms, is made without any substantive support from caselaw and could possibly render the language of the Act meaningless. As such, defendant's motion is **DENIED**.

### 5. FOIA IMPROVEMENT ACT OF 2016.

In 2016, Congress amended FOIA to add the "foreseeable harm" standard in which agencies "shall withhold information" under the FOIA "only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). In other words, even if an exemption applies, an agency must release a record if disclosure would not reasonably harm that exemption-protected interest and its disclosure is not prohibited by law. The "foreseeable harm" standard applies here, where plaintiffs requested the documents at issue after the date of enactment (June 30, 2016).

Defendant first argues that the foreseeable harm test is not required here because disclosure is prohibited by the Trade Secrets Act (Dkt. No. 38 at 20). In the alternative, defendant provides four interests protected by Exemption 4 which would be harmed if the

reports are disclosed: the submitters' interest in the confidentiality of the reports; their commercial interest in keeping the documents confidential; OFCCP's interest in the accuracy and availability of contractor's information; and OFCCP's interest in the efficiency and effectiveness of its oversight (Dkt. No. 38 at 21). Plaintiffs contend that defendant has not met its burden because it has failed to demonstrate "in any particularized manner," that any of the aforementioned interests are a "foreseeable commercial or confidential harm that is objectively at risk" (Dkt. No. 49 at 16).

As stated earlier, the Trade Secrets Act is inapplicable in this context and defendant does not meet the standard for Exemption 4. Therefore, defendant must disclose the EEO-1 reports and is not required to first meet the test under the FOIA Improvement Act of 2016.

### 6. DECLARATORY RELIEF FOR ALLEGED DELAY IN WITHHOLDING RECORDS.

Plaintiffs alleged in their cross-motion for summary judgment that defendant has failed to comply with FOIA by delaying disclosure of EEO-1 reports for a number of years (Dkt. No. 39 at 23-24).

An agency must make a determination on a FOIA request within 20 days after receipt of the request unless exceptional circumstances specified in the statute are present, in which case it can extend its response time by a maximum of 10 days. 5 U.S.C. § 552(a)(6)(A)(i)(ii). A determination need not be the full production of documents, but the agency must at least inform the requester what documents it will produce and exceptions it will claim. *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F.Supp.3d 1074, 1089 (N.D. Cal. Mar. 30, 2015) (Judge Samuel Conti).

Here, plaintiffs characterize defendant's delays to have started from January 10, 2019, when plaintiffs made their initial FOIA request (Dkt. No. 39 at 24). Defendant contests that all four FOIA requests were not consolidated until June 3, 2022, and prior to this date, plaintiffs were "adding, withdrawing, and combining their various requests" (Dkt. No. 42 at 22 n.11). Defendant argues that OFCCP communicated to plaintiffs sixteen working days after plaintiffs had consolidated all four FOIA requests, on June 27, 2022, that it would be following its

notification procedures and informed plaintiffs that it would disclose EEO-1 data for all contractors who did not object to its disclosure (Dkt. No. 42 at 22).

Agencies are nonetheless statutorily required to provide timely determinations for each FOIA request made: no later than thirty days after the request.  5 U.S.C. § 552(a)(6)(A)(i)(ii). Therefore, this order finds that defendant did not provide plaintiffs with a timely determination following the first FOIA request.  For the same reason, this order finds that defendant did not provide timely determinations for the second and third FOIA requests.

However, a declaratory judgment is not always appropriate when the agency violates these time limits.  Issuing declaratory judgments must always be guided by "whether a judgment will clarify and settle the legal relations at issue and whether it will afford relief from the uncertainty and controversy giving rise to the proceedings." *Nat'l Res. Def. Council,* 966 F.2d 1292, 1299 (9th Cir. 1992).

Contrary to plaintiffs' assertion, this order finds that declaratory judgment is not appropriate here.  While defendant violated FOIA deadlines, this order does not find that defendant's actions were "intentional, persistent, and extreme" (*citing* Dkt. No. 39 at 23-24). This order recognizes the large scope of all four FOIA requests made to defendant and that defendant was tasked with producing five years' worth of EEO-1 data, notifying 25,000 entities, and processing thousands of objections (Dkt. No. 42 at 25).  As such, plaintiffs' motion for declaratory judgment is **DENIED**.

7.  **DEFENDANT'S WITHHOLDING OF 621 EEO-1 REPORTS.**

Plaintiffs allege that defendant incorrectly withheld 621 EEO-1 reports (Dkt. No. 39 at 25).  Defendant contends that these reports were submitted by entities who were not federal contractors at the time of the reports and are therefore not within OFCCP's jurisdiction (Ahaghotu Decl., Dkt. No. 35 ¶ 59).  Plaintiffs assert that defendant is applying a narrow reading of the FOIA request incorrectly excludes who is considered a federal contractor.  This disagreement over whether the submitter of these 621 reports were federal contractors or under the jurisdiction of the OFCCP when the reports were submitted raises a genuine issues of material fact.  For this reason, plaintiffs' cross-motion for summary judgment is **DENIED**.

**CONCLUSION**

For the reasons and to the extent stated above, plaintiffs' and defendant's cross-motions for summary judgment are **DENIED IN PART AND GRANTED IN PART**. Defendant shall produce the remaining EEO-1 reports at issue within 28 days of this order.

**IT IS SO ORDERED.**

Dated: December 22, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE