1   ISMAIL J. RAMSEY (CABN 189820)
    United States Attorney
2   MICHELLE LO (NYRN 4325163)
    Chief, Civil Division
3   PAMELA T. JOHANN (CABN 145558)
    Assistant United States Attorney
4
        450 Golden Gate Avenue, Box 36045
5       San Francisco, California 94102
        Telephone: (415) 436-7025
6       Facsimile: (415) 436-7234
        pamela.johann@usdoj.gov
7
    Attorneys for Defendant UNITED STATES
8   DEPARTMENT OF LABOR

9

10                      UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13

14  THE CENTER FOR INVESTIGATIVE          ) Case No. 22-cv-07182-WHA
    REPORTING and WILL EVANS,             )
15                                        )
            Plaintiffs,                   ) **EMERGENCY MOTION FOR STAY OF**
16                                        ) **DISCLOSURE DEADLINE PENDING APPEAL**
        v.                                ) **BY DEPARTMENT OF LABOR**
17                                        )
    UNITED STATES DEPARTMENT OF           )
18  LABOR,                                )
                                          )
19          Defendant.                    )
                                          )
20  _____)

21

22

23

24

25

26

27

28

Pursuant to Federal Rule of Civil Procedure 62(d) and (e) and Local Rule 7-11, Defendant Department of Labor ("DOL") hereby moves, on an emergency basis, for a stay of the February 20, 2024 disclosure deadline set forth in the Court's December 22, 2023 Order, Dkt. No. 51 as extended by Order dated December 28, 2024, Dkt. No. 53, pending appellate review.  DOL filed its notice of appeal today, February 15, 2024.  Dkt. No. 57.  A stay of the disclosure deadline is necessary to avoid the irreparable harm that would result to DOL from mandated disclosure pending appeal.

Because February 19, 2024, is a federal holiday and disclosure has been ordered for February 20, 2024, DOL respectfully requests a decision on this emergency motion by Friday, February 16, 2024, to give DOL the opportunity to seek an emergency motion for stay pending appeal from the Ninth Circuit pursuant to Federal Rule of Appellate Procedure 8(a)(2).  In the event this Court denies the motion for stay, DOL respectfully requests that the Court extend the disclosure date by seven days, to February 27, 2024, to permit DOL to seek a stay from the Ninth Circuit.

In anticipation of the impending disclosure deadline, counsel for DOL attempted to connect with Plaintiffs' counsel on Tuesday, February 13, 2024, to get their position regarding DOL's request for a stay pending appeal.  Plaintiffs were unwilling to stipulate to an extension of the deadline.  Following the filing of the Notice of Appeal earlier today, counsel for DOL again emailed counsel for Plaintiffs requesting that they stipulate to a stay pending appeal, or in the alternative, to an interim extension of the deadline to permit time for the Court to consider DOL's motion for a stay on a less abbreviated timeline.  Plaintiffs responded that they were unwilling to stipulate to a stay at this time.

## ARGUMENT

By Order dated December 22, 2023, this Court denied in part and granted in part the parties' cross-motions for summary judgment in this Freedom of Information Act ("FOIA") case and held that the EEO-1 reports of the five bellwether federal contractors were not exempt from disclosure under Exemption 4.  The Court ordered DOL to "produce the remaining EEO-1 reports at issue within 28 days" of the Order.  Dkt. No. 51 at 13.  Pursuant to the parties' stipulation, the Court extended that deadline to February 20, 2024, the same day as the government's deadline to appeal.  Dkt. No. 53. Earlier today, DOL filed a notice of appeal.  Dkt. No. 57.  To preserve the government's right to seek appellate review and to preserve the Ninth Circuit's ability to consider the issues presented in this

appeal, DOL respectfully requests a stay of the February 20, 2024, production deadline pending appeal. A stay of the production deadline is necessary to avoid the irreparable harm that would result if the government is forced to release the documents before it has the opportunity to pursue its appellate rights.

The Court has discretion to determine whether it should stay its orders pending appeal. *See City of Oakland v. Holder*, 961 F. Supp. 2d 1005, 1012 (N.D. Cal. 2013). To make this decision, district courts consider four factors: (1) whether the movant has made a strong showing that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (stay of order releasing prisoner); *Leiva–Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (stay of removal). In the Ninth Circuit, a party requesting a stay may either show "both a probability of success on the merits and the possibility of irreparable injury" or "that serious legal questions are raised and that the balance of hardships tips in its favor." *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983). Here, the government will effectively be denied its right of appeal if a stay is not granted, and the matter undoubtedly presents serious legal questions. In light of this, a stay is plainly warranted.

### A. The Government Would Suffer Irreparable Injury if a Stay is not Granted, and the Balance of Hardships Weighs in its Favor.

Once the documents have been surrendered, not only is any possible appeal moot, but the status quo can never be restored. The documents are in the public domain forever, and the breach of confidentiality caused by public release cannot be undone. That alone is irreparable harm. *See John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989) (Marshall, J., in chambers); *see also United States Dep't of Commerce v. Assembly of Cal.*, 501 U.S. 1272 (1991). As this Court has recognized, disclosure of confidential information "would necessarily destroy the private information, no matter the circumstance." *A.S.B.L. v. Dep't of Defense*, 411 F. Supp. 3d 824, 832 (N.D. Cal. 2019). Accordingly, "stays are routinely granted in FOIA cases." *Ctr. for Nat'l Sec. Studies v. DOJ*, 217 F. Supp. 2d 58, 58 (D.D.C. 2002) (granting stay because disclosure of detainee names would "effectively moot any appeal"), *aff'd in part, rev'd in part*, 331 F.3d 918 (D.C. Cir. 2003).[1]

---

[1] *See HHS v. Alley*, 556 U.S. 1149, 1149 (2009); *Dep't of Commerce v. Assembly of the State of*

As the First Circuit recognized, in the absence of a stay, the appeal will become moot, and the vital public policy interest represented by the claimed exemption will be irretrievably harmed:

> [T]he Constitution and laws entitle litigants to have their cases independently reviewed by an appellate tribunal.  Meaningful review entails having the reviewing court take a fresh look at the decision of the trial court before it becomes irrevocable.  Appellants' right of appeal here will become moot unless the stay is continued pending determination of the appeals.  Once the documents are surrendered pursuant to the lower court's order, confidentiality will be lost for all time.  The status quo could never be restored.

*Providence Journal*, 595 F.2d at 890 (emphasis added).  The need to preserve the Government's right to appellate review of a disclosure order is "perhaps the most compelling justification" for the grant of a stay.  *John Doe Agency*, 488 U.S. at 1309 (Marshall, J., in chambers).  In this case, once the Government is forced to disclose the withheld documents to plaintiff, its right to a meaningful appeal will be lost, and the status quo cannot be restored.

The harm from compliance with the December 22, 2023 order is not only irreparable, but also significant.  Important interests are protected by FOIA's exemptions, which "are as much a part of [FOIA's] purpose[s and policies] as the [statute's disclosure] requirement.'" *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) ("*Argus Leader*") (citation omitted; alterations in original).  In particular, Exemption 4 is intended to protect the interests of third-party submitters whose information was collected by the government.  *ASBL*, 411 F. Supp. 3d at 836.  Refusing to grant a stay here would irrevocably compromise these interests without any opportunity for the Ninth Circuit's to consider whether the documents at issue should be—as the government contends—protected from disclosure by Exemption 4.  On the other side of the balance, a stay would not substantially harm Plaintiffs.  DOL has already disclosed the vast majority of documents that Plaintiffs sought in their FOIA requests.  The stay will appropriately extend for the duration of the appeal to provide DOL a meaningful opportunity to challenge the Court's ruling.

---

*California*, 501 U.S. 1272 (1991); *DOJ v. Rosenfeld*, 501 U.S. 1227 (1991); *John Doe Agency*, 488 U.S. at 1309; *Islamic Shura Council of S. Cal. v. FBI*, 635 F.3d 1160, 1164 (9th Cir. 2011); *Elec. Frontier Found. v. ODNI*, 595 F.3d 949, 954 (9th Cir. 2010) (granting stay pending appeal to allow Solicitor General opportunity to decide which portions of summary judgment order to appeal), *amended by* 639 F.3d 876 (9th Cir. 2010); *Taylor v. Dep't of the Army*, 684 F.2d 99, 102 (D.C. Cir. 1982); *see also Martin v. IRS*, 857 F.2d 722, 724 (10th Cir. 1988); *Acumenics Research & Technology v. DOJ*, 843 F.2d 800, 803 (4th Cir. 1988); *Coastal States Gas Corp. v. Dep't of Energy*, 644 F.2d 969, 973-74 (3d Cir. 1981); *Providence Journal Co. v. FBI*, 595 F.2d  889, 889-90 (1st Cir. 1979).

**B.    This Appeal Presents Serious Legal Questions, and the Government Can Establish a Probability of Success.**

The Court is familiar with DOL's view regarding application of Exemption 4 to the EEO-1 reports at issue here.  While DOL recognizes that the Court has ruled that the reports at issue are not "commercial in nature," DOL respectfully submits that, at a minimum, there is a substantial basis for the government's views on this important and unsettled issue, which has never been considered by the Ninth Circuit.  Indeed, this Court acknowledged that "there is no clearly defined limit for what is considered 'commercial' within our court of appeals."  Dkt. No. 51 at 5.

The Ninth Circuit has held that the term "commercial" must be given its "ordinary or common" meaning. *Watkins v. U.S. Bureau of Customs and Border Protection*, 643 F.3d 1189, 1194 (9th Cir. 2011).  This Court recognized that principle, but proceeded to apply an unduly constricted interpretation of the term that engrafted requirements that are neither contained in the statutory language nor consistent with prior case law.  There was no disagreement between the parties that headcount data is "of a commercial nature," even if it is, as Plaintiff argued, "broad and non-specific."  But this Court's Order seems to impose both a specificity and a "competitive impact" requirement on the commerciality analysis, requiring that the information not be simply commercial in nature but that it reveal "commercially valuable information."  Dkt. No. 51 at 6.  That requirement is not contained in the statutory language, is not dictated by the plain meaning of "commercial," and is inconsistent with the Supreme Court's decision in *Argus Leader*.

Second, the Court focused on the specific format and use of the EEO-1 report rather than the inherent nature of the information that it contained to reach its conclusion.  This approach is inconsistent with the commerciality standard, which asks whether the information "serves a 'commercial function' or is of a 'commercial nature'" "in and of itself." *Citizens for Responsibility & Ethics in Washington v. D.O.J.*, 58 F.4th 1255, 1263 (D.C. Cir. 2023).  It is the nature of the information, not the format of the data or the purpose of its compilation, that is the relevant inquiry. *See CREW*, 58 F.4th at 1265 (citing cases).  Even if the specific format of the EEO-1 report was designed for government reporting purposes, the information contained in that report is commercial in nature.

Third, the Court dismissed the argument that diversity data has inherent commercial

1   significance—a proposition that was conceded by Plaintiffs' expert, who acknowledged that "many

2   firms use diversity data in designing and managing aspects of their internal operations"—without

3   addressing the expert testimony or the objector's attestations of their own use of diversity data. The

4   Court reasoned that "[l]ike names or birthdays, the demographic background of employees does not

5   speak to the commercial contributions of a company's workforce."  Dkt. No. 51 at 8. The Court failed to

6   consider the commercial nature of the collective demographic statistics presented in the EEO-1 reports,

7   mistakenly narrowing its focus to the specific demographic background of individual employees.

8        Fourth, the Court never addressed or distinguished the considerable body of case law that has

9   come to the opposite conclusion.  *See, e.g.*, *Pub. Citizen Found. v. U.S. Dep't of Labor*, No. 18-cv-

10  00117, 2020 WL 9439355, at *7 (D.D.C. June 23, 2020); *Sears, Roebuck & Co. v. Gen. Services*

11  *Admin.*, 384 F. Supp. 996, 1005 (D.D.C. 1974).  Instead, the Court extended the reasoning of *Getman v.*

12  *NLRB*, 450 F.2d 673 (D.C. Cir. 1971), which is based on the principle that a person's identity, without

13  more, has no commercial value "in and of itself."  The workforce demographic information in the EEO-

14  1 reports is substantively different from a bare list of employee names because a person's identity,

15  without more, has no commercial significance "in and of itself."

16       Finally, the Court announced that "Exemption 4 of FOIA and the Trade Secrets Act are no

17  longer co-extensive," without providing any grounds for this assumption apart from the fact that *Argus*

18  *Leader* did not address the confidentiality standard under the Trade Secrets Act.  But *Argus Leader*'s

19  broadening of Exemption 4's confidentiality standard only opens the possibility that the Ninth Circuit's

20  law in this area is no longer settled.  *See Synopsys, Inc. v. U.S. Dep't of Labor*, No. 20-16414, 2022 WL

21  1501094, at *4 (9th Cir. May 12, 2022).  In a footnote, the *Synopsis* Court noted that the parties had

22  acknowledged the possibility that Exemption 4 may now be broader than the Trade Secrets Act, but it

23  explicitly left the issue open, stating that it "need not decide here whether Exemption 4 is indeed now

24  broader in scope than the Trade Secrets Act."  2022 WL 1501094, at *4 n.3.  The Court erred in

25  assuming that the term "confidential" in the Trade Secrets Act is narrower than the ordinary meaning of

26  the term in Exemption 4, without engaging in any analysis of the issue as a textual matter.

27       DOL's appeal raises serious legal issues and is likely to succeed.  DOL respectfully requests that

28  the Court stay its order for the duration of this appeal.  In the event this Court denies the motion for stay,

1    DOL respectfully requests that the Court extend the disclosure date by seven days, to February 27, 2024,

2    to permit DOL to seek a stay from the Ninth Circuit.

3    DATED:  February 15, 2024                    Respectfully submitted,

4                                                ISMAIL J. RAMSEY
                                                 United States Attorney
5
                                                 _/s/ Pamela T. Johann_____
6                                                PAMELA T. JOHANN
                                                 Assistant United States Attorney
7
                                                 Attorneys for Defendant
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28